**In re Joseph Francis COSTELLO and Claudia June Costello, Debtors.**

**Bankruptcy No. 89–52230.**

United States Bankruptcy Court,
E.D. Kentucky,
Lexington Division.

Dec. 31, 1992.

W. Thomas Bunch, Lexington, KY, for debtors.

Joel C. Morgan, trustee, Reinhardt, Morgan & Arnold, Lexington, KY.

Joseph J. Golden, Asst. U.S. Trustee, Louisville, KY.

## MEMORANDUM OPINION

JOE LEE, Chief Judge.

This matter is before the court on remand for reconsideration of the court's opinion and order of January 15, 1991 in light of *In re Boddy*, 950 F.2d 334 (6th Cir.1991).

---

**1.** This court has not seen the motion to remand filed with the Sixth Circuit Court of Appeals.

## I

On January 15, 1991 the court entered an opinion and order reducing the fee of counsel for the debtors from the sum of $1,500.00 to $750.00 and directing counsel to remit $750.00 to the panel trustee. 11 U.S.C. § 329(b), § 541(a)(3).

On January 22, 1991 counsel for the debtors filed a notice of appeal of that order and opinion and a designation of record.

On May 20, 1991 the U.S. District Court for the Eastern District of Kentucky ("District Court") entered an opinion and order affirming the decision of this court.

On January 14, 1992 the Sixth Circuit Court of Appeals entered an order, without discussion, granting the motion of counsel for the debtors to remand.[1]

On February 18, 1992 the District Court entered an order remanding the case to this court "for determination of appropriate attorney's fees in accordance with the opinion of *In re Boddy* (citation omitted)."

On August 31, 1992 the chapter 7 trustee filed a notice of abandonment of the $750.00 in question.

## II

In *In re Boddy*, 950 F.2d 334 (6th Cir. 1991), the Sixth Circuit held that application of a "normal and customary" standard rather than the "lodestar" method to determine an attorney's fee in a chapter 13 case was an abuse of discretion. The court looked to the language of 11 U.S.C. § 330(a)(1), "reasonable compensation for actual, necessary services rendered ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title," and held that an "analysis of how the fees are determined" is required when ruling on an application for allowance of an attorney fee from the estate.

While insisting that bankruptcy courts "determine a reasonable hourly rate for the particular attorney handling the case and

Therefore, the court is somewhat in the dark as to the basis for the remand.

then multiply that rate by the reasonable hours worked on the case," the Sixth Circuit stated:

> Nevertheless, we do not hold that the bankruptcy court can never consider the "normal and customary" services rendered in a Chapter 13 bankruptcy. The court can legitimately take into account the typical compensation that is adequate for attorney's fees in Chapter 13 cases, as long as it expressly discusses these factors in light of the reasonable hours actually worked and a reasonable hourly rate. The bankruptcy court also may consider other factors such as the novelty and difficulty of the issues, the special skills of counsel, the results obtained, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area. *See Harman [v. Levin]*, 772 F.2d [1150] at 1152 n. 1 [ (4th Cir.1985) ] (citing twelve factors bankruptcy courts may consider).

*Boddy*, 950 F.2d at 338.

The factors listed in *Harman* are: (1) the time and labor expended; (2) the novelty and difficulty of the questions presented; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' awards in similar cases.

The Sixth Circuit acknowledged that in many cases discussion of these factors will be unnecessary, in fact "duplicative," if the court first determines the lodestar amount because that equation considers all of the *Harman* factors in its analysis of the reasonable hourly rate and the reasonable hours worked. *Boddy* requires, at a minimum, that bankruptcy courts "expressly calculate the lodestar amount when determining reasonable attorney's fees."

## III

Apparently the case before this court was remanded on motion of counsel for the debtors upon representations that the court had not adhered to the lodestar method of fee calculation in fixing $750.00 as a reasonable fee for the attorney for the debtors and in ordering the attorney to disgorge the amount of fee received by him in excess of that amount.

It should be noted that in this case the debtors paid the attorney a fee of $1,500.00 before their joint petition for relief under chapter 7 of the Bankruptcy Code was filed and that in any case the court on its own initiative or on motion of a party in interest may examine the reasonableness of a fee. 11 U.S.C. § 329(b); Rule 2017, Federal Rules of Bankruptcy Procedure.

The matter before this court does not involve an application under 11 U.S.C. § 330 for allowance of compensation from the estate but is a disputed matter under 11 U.S.C. § 329 involving recovery of monies for the estate or for the debtors. The test to be applied by the court in examining fee transactions between debtors and their attorneys under section 329(b) is more succinct, precise, and exact than the test under section 330 for awarding functionaries compensation from the estate.

The test under section 329(b) is the "reasonable value of any such services"; whereas, the test under section 330 is "reasonable compensation for actual, necessary services ... based on the nature, the extent, and the value of the services, the time spent on such services, and the cost of comparable services other than in a case under this title...." Although an argument could be made that the guidelines of section 330 are incorporated in the "reasonable value" language of section 329(b), statutory construction dictates an opposite conclusion. Because section 330 is "subject to" section 329, section 330 is subordinate to section 329. Consequently, in

determining the "reasonable value" of services under section 329(b), the amount other attorneys would charge for such services may be more relevant under section 329 than under section 330.

Clearly, one purpose of section 329 of the Code is to protect debtors from overreaching by attorneys. Another purpose is to protect creditors by permitting recovery of excess fees. *Matter of Wilson,* 694 F.2d 236 (11th Cir.1982); 11 U.S.C. § 541(a)(3).

To the extent that an attorney is permitted to retain a portion of excess fees paid, or to the extent that any excess is ordered refunded to the debtor or to the estate, one must question whether any shifting of the burden of the fees to the estate and ultimately to creditors occurs and question whether the rationale underlying decisions applying fee-shifting statutes is relevant.[2]

In fact, one must question whether any shifting of the burden of fees occurs in a chapter 13 case such as *In re Boddy*. In most chapter 13 cases debtors have no assets to liquidate in order to pay a dividend to creditors holding unsecured claims. Instead, by reason of the voluntary agreement of the debtor to contribute a portion of future earnings to the payment of administrative expenses and creditors holding unsecured claims, an estate for the payment of such claims is created. 11 U.S.C. §§ 1306(a), 1322(a)(1), 1326(b). Thus, the burden of paying administrative expenses, such as attorneys' fees and trustees' commissions, never shifts from the debtor to creditors. Debtors in chapter 13 cases, and for that matter individual debtors in no-asset chapter 7 cases, bear the entire cost of counsel fees. The court is under a special obligation to be alert to fee-gouging by attorneys in such cases, and the fees normally and customarily charged by other competent attorneys for similar services are especially relevant. The Sixth Circuit acknowledged as much in concluding *In re Boddy.*

■ This court has no argument with the proposition that generally the lodestar formula should be applied in awarding fees under section 330 of the Code. In fact Rule 2016 of the Federal Rules of Bankruptcy Procedure appears to subsume the lodestar formula. But caution must be exercised, or the ease of application of a formula will replace the discretion of the bankruptcy courts in fixing fees. This case offers such an example.

In this case the United States trustee, a statutory party in interest (11 U.S.C. § 307), alleged that the fee charged by counsel for the debtors seemed excessive. He requested that counsel be directed to submit an itemization of the services performed and out-of-pocket expenses incurred, and he moved the court for a hearing on the reasonableness of the attorney fee. The United States trustee requested that counsel for the debtors be required to turn over to the panel trustee in the case any sums determined to be in excess of the reasonable value of the services and reimbursement of expenses.

Prior to the hearing on the motion of the United States trustee, counsel for the debtors filed a response in which he itemized the hours expended and expenses incurred by him in representing the debtors in this case. The response is in a format which permits ready application of the lodestar formula. The response sets out the hourly rate charged by the attorney ($125 per hour), the number of hours expended, and a description of the work or services performed. The court considered the response and the entire record in the case in reaching its initial determination with respect to the reasonableness of the fee received by the attorney from the debtors. Consequently, the court is somewhat mystified by the implication that it ignored the lodestar formula in determining the reasonableness of the fee charged by the attorney.

Perhaps counsel for the debtors is taking the position that the lodestar formula (rate × hours = fee) is a rote calculation which establishes the reasonableness of the fee beyond doubt and precludes use of discre-

---

**2.** 11 U.S.C. § 330(a) is one of more than 100 so-called "fee-shifting" statutes Congress has enacted. *See Coulter v. Tennessee,* 805 F.2d 146, 152– 55 (6th Cir.1986) (Appendix to opinion lists 131 federal fee-shifting statutes; 11 U.S.C. § 329(b) is not among those listed).

tion by the court in reducing the fee. However, as the Supreme Court noted in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the court to adjust the fee upward or downward, including the important factor of the "results obtained." 461 U.S. at 434, 103 S.Ct. at 1940.

Later decisions of the Supreme Court reciting that the "lodestar" amount is presumed to be a reasonable fee do not detract from the holding in *Hensley* since the issue of whether the lodestar amount may be reduced was not before the court in those cases. *See Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

As for the important factor of the "results obtained," in this case there is nothing exceptional about the results obtained by counsel. The debtors could have obtained the same results at one-third the cost had they been represented by other competent counsel practicing in this district. This factor of "results obtained" is especially relevant in determining the "value" of the services for purposes of section 329 of the Code. Obviously then, the number of hours of work performed by the attorney times hourly rate is some evidence but is hardly conclusive evidence of the value of the services.

Historically, the lodestar formula evolved as a means of reducing or controlling fees, an alternative to percentage fee awards which appeared to be excessive. *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir.1973). It would be a strange turn of events indeed if this formula mutated into a calculation that is completely binding on bankruptcy courts. If this mutation occurs, the lodestar will shine on attorneys who practice consumer bankruptcy cases as they chortle all the way to the bank.

## IV

With reference to *In re Boddy*, 950 F.2d 334 (6th Cir.1991), and the factors listed in *In re Harman*, 772 F.2d at 1152 n. 1, the first of which is the time and labor expended, counsel has itemized 15.50 hours of services rendered, and 6.75 hours of "Projected Services to be Rendered," for a total of 22.25 hours. However, one half of an hour of time spent for services rendered involved the U.S. Trustee's motion for itemization and reduction of attorney fee, and three hours of projected services are shown as "Preparation and attendance at U.S. Trustee's Motion for Itemization of Fees and defense of same." As the court noted in its previous opinion, "[t]he time expended by counsel as an officer of the court in preparing a response to assist the court in carrying out its duties under title 11 U.S.C. § 329 and Bankruptcy Rule 2017 is not chargeable to either the debtor or the estate." Memorandum Opinion dated January 15, 1991, p. 4. It should be obvious that the attorney should not be permitted to charge the debtor or the estate for services in his own behalf in resisting a refund of monies to the debtor or the estate. These services benefit only the attorney and not the debtor or the estate.

Another entry of allowable projected services is "[u]ltimate receipt of discharge of bankruptcy and transmittal to Debtors." The record reveals that notice of discharge was given on May 21, 1990. The clerk of the court customarily sends a copy of the discharge to debtors. A follow-up notice by the attorney is duplicative. The total number of hours indicated by counsel including projected services but excluding time spent responding to the U.S. Trustee's objection is 18.75 hours.

As for the novelty and difficulty of the questions raised, the court reiterates:

> The statement of financial affairs indicates the husband is an unemployed construction worker; the wife is employed as an office manager at Toyota Motor Manufacturing Company of Georgetown, Kentucky. Her employer provides her with a company-owned car. The debtors

kept no formal records relating to their financial affairs.

The schedules to the petition indicate the debtors own a residence which they value at $140,000, overencumbered by a mortgage to Farmers Bank and Trust Company of Georgetown, Kentucky, on which they owe in excess of $150,000. The schedules indicate they wish to reaffirm this indebtedness. The proof of claim filed by the bank indicates the debtors acquired the property by deed dated January 4, 1988, at which time they executed a mortgage thereon to the bank for $152,000.

The debtors own a 1988 Plymouth Voyager automobile which they value at $10,000, and which is subject to a purchase money security interest in favor of Chrysler Credit Corporation on which there is a balance due of $12,000. The schedules indicate the debtors wish to reaffirm this debt.

Shortly after the meeting of creditors held January 2, 1990 the trustee filed a notice of abandonment of the estate's interest in the debtors' residence and the 1988 Plymouth Voyager automobile.

Both Farmers Bank and Trust Company and Chrysler Credit Corporation requested and were granted relief from stay. There was no appearance by or on behalf of the debtors at the hearing on the motions for relief from stay. Neither of these debts was reaffirmed by the debtors. The discharge has been entered so that it is now too late for the debtors to enter into enforceable reaffirmation agreements.

The debtors owe a debt to Sears, Roebuck and Company in the amount of $3,069.96 secured by a leaf blower which they value at $25.00 and a dryer which they value at $100.00. They indicate they wish to reaffirm this debt. A reaffirmation agreement for the amount of $251.98 payable at the rate of $11.00 per month commencing April 23, 1990 does appear of record herein. This appears to be a form document prepared by the creditor or counsel for the creditor. It is signed by the debtor Joseph Costello and by counsel for the debtors.

The debtors owe a debt to Kentucky Finance Company in the amount of $2,310.56. They listed two debts to Kentucky Finance Company, one in schedule A–2 for $160.00 secured by a lien on household goods, and one in schedule A–3 for $2,400.00 allegedly unsecured. The indebtedness to Kentucky Finance Company is secured by a nonpossessory, non-purchase-money security interest in household goods and other personal property of the debtors. The debtors valued their household goods and miscellaneous personal property at $5,375.00. They indicate they wish to reaffirm the debt to Kentucky Finance Company. A reaffirmation agreement for $2,700.00 payable at the rate of $209.00 per month without interest appears of record. This appears to be a form agreement prepared by counsel for the creditor for the signatures of the debtors and their attorney.

The debtors list in schedule A–3 to their petition unsecured debts "for expenses in the ordinary course of living" totaling $35,697.00. There are no business debts involved.

Memorandum Opinion dated January 15, 1991, pp. 2–4.

This is obviously an "ordinary run-of-the mill consumer" bankruptcy case; there was no novelty and little difficulty involved in the issues raised. Consequently, experienced counsel, but not expert, was required to properly perform the legal services rendered. In this district the customary fee for like work is $500.00 to $1,000.00, for an average of $750.00.

Excluding time involved in responding to the U.S. Trustee's motion, counsel's itemization shows 15 hours for time expended during a four-month period and 3.75 hours in projected services. A review of the itemization indicates that the expended time was spent in an initial conference with the debtors, preparing the petition and schedules, filing and amending those schedules, preparing for and attending the section 341 meeting of creditors, supplying additional documentation to the chapter 7 trustee, conferring in regard to the debt-

ors' residence, and reviewing reaffirmation proposals. As for "court time," counsel lists one hour for conferring with debtors, appearing at the section 341 meeting, and conferring with the chapter 7 trustee on January 2, 1990. Counsel also lists one quarter of an hour for appearance on a motion for relief from stay on February 7, 1990. However, the minute sheet for that day does not indicate counsel for the debtors made an appearance at the hearing. The only out-of-the-ordinary activity by counsel appears to be communication with the debtors and counsel for Farmers Bank so that the bank could show the debtors' residence to a potential purchaser, a total of .75 hour. Thus, since the questions raised in this case were relatively routine ones with which regular practitioners quickly become familiar, "the time limitations imposed by the client or circumstances" were simply those imposed for routine matters, those devoid of any unusual factors. The amount in controversy was relatively nominal, and the results obtained were predictable.

Certainly the court does not question the experience, reputation, and ability of counsel. Furthermore, the court has no way of commenting on counsel's opportunity costs in pressing the instant litigation or counsel's expectations at the outset of the litigation.

The undesirability of the case within the legal community is nonexistent. In fact these "ordinary run-of-the-mill consumer" bankruptcy cases are coveted because the work is generally repetitive and does not involve much "down time," that is, time spent outside of the office.

The court has already commented that services were rendered within a six-month period, so the nature and length of the professional relationship between counsel and the debtors were typical. The court also has commented that attorneys' fees in similar cases are between $500.00 and $1000.00, for an average of $750.00. According to an American Bankruptcy Institute ("ABI") study, the fee of $750.00 fixed by the court in this case conforms to maximum fee guidelines adhered to by many

bankruptcy courts. *American Bankruptcy Institute National Report on Professional Compensation in Bankruptcy Cases*, May 1991, pp. 169–176. Therefore, the valuation of services in this case at $750.00 is buttressed by the ABI study.

IV

Having reviewed the application for an award of $1,500.00 in compensation in light of *Boddy* and having employed the *Harman* factors in analyzing counsel's request, even though the court doubts the applicability of these factors to a proceeding under section 329(b), the court concludes the fee charged in this case is excessive and should be reduced to the sum of $750.00. Since the chapter 7 trustee has filed a notice of abandonment, the overcharge of $750.00 is ordered remitted to the debtors.