**In re Wilma Jean SHAMBURGER, Debtor.**

**Bankruptcy No. 94–04225–BGC–13.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Aug. 17, 1995.

Steven Altmann, Birmingham, Alabama, for Debtor.

David P. Rogers, Jr., Chapter 13 Trustee.

## ORDER ON APPLICATION FOR ADDITIONAL ATTORNEY'S FEES

BENJAMIN COHEN, Bankruptcy Judge.

This matter is before the Court on an *Application for Additional Compensation for the Attorneys for the Debtors* filed by Steven D. Altmann, the attorney for the Debtor.

This Court's Order of Confirmation entered on September 26, 1994 awarded compensation of $850.00 to Mr. Altmann's law firm. The Court considered this amount as reasonable for actual and necessary services in this case. The fee was based on the amount of debt scheduled in the case and according to a compensation scale adopted by the Court for that purpose.

■■■ Mr. Altmann requests compensation in addition to the amount awarded and filed a detailed application to support his request.[1] To decide this matter, this Court chooses to apply an analysis which considers not only whether the services performed are actual and necessary, but whether they are also either services required in addition to those for which compensation has already been awarded or were services that were anticipated but which required a significantly greater amount of time, effort and expense than anticipated. This standard of review departs from the lodestar method.[2]

1. If an additional fee is awarded how would the attorney be paid? Would he file a claim in the bankruptcy case? If he does, who could contest the claim? If the debtor desires to do so, who would represent the debtor's interests? Counsel's contractual relationship with his client should answer these questions.

2. Section 330(a) of Title 11 of the United States Code provides that the bankruptcy court may award reasonable compensation for actual, necessary services rendered by a trustee, examiner, and professional person employed in various capacities under the Bankruptcy Code. No one has objected to the fees requested; however, the determination of "reasonable" fees for services rendered in connection with the administration of bankruptcy cases is a judicial function, a responsibility which a bankruptcy judge affirmatively exercises, regardless of whether or not the fees requested in a particular instance are actual-

## I. Issue

This matter involves an issue this Court has not had an occasion to address. That is, may a court allow an attorney representing a chapter 13 debtor fees based on a "normal and customary" debt-based formula or must the Court apply the "lodestar" method typically employed in other bankruptcy contexts.

## II. Standards of Review of Applications

■■■■ The Eleventh Circuit Court of Appeals has not addressed this issue. Other circuit courts have. In *Boddy v. United States Bankruptcy Court, Western District of Kentucky*, 950 F.2d 334 (6th Cir.1991), the Court of Appeals for the Sixth Circuit held

that regardless of a trial court's application of a "normal and customary" standard of review to determine an attorney's chapter 13 case fees, "[a]t a minimum bankruptcy courts must expressly calculate the lodestar amount when determining reasonable attorney's fees." *Id.* at 338. The Court of Appeals for the Fourth Circuit recognized the bankruptcy court's authority to consider "other factors" in chapter 13 cases even where a bankruptcy court considered the common 12 factors of fee review. The Court found:

> Finally, in setting a reasonable fee on the basis of its findings, the bankruptcy court committed no abuse of its discretion. *See Tousley v. North American Van*

ly opposed by any party in interest. *See, In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.1977). And regardless of any action by a party in interest, the bankruptcy court has the authority to hold an evidentiary hearing on its own motion if petitions for compensation do not adequately develop the factual basis of a fee award. Similarly, if no objections are raised by parties-in-interest, including the Bankruptcy Administrator, the court retains the authority to award only reasonable compensation for actual and necessary services. *In re Marker*, 100 B.R. 569 (Bkrtcy.N.D.Ala.1989).

As described in *In re First Colonial Corp. of America*, 544 F.2d at 1299, and its progeny, *Matter of U.S. Golf Corp.*, 639 F.2d, 1197, 1201 (5th Cir.1981), *In re Beverly Mfg. Corp.*, 841 F.2d 365, 370 (11th Cir.1988), and *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 877 (11th Cir.1990), determining a reasonable fee in bankruptcy is a three step process.

First, the bankruptcy judge must ascertain the nature and extent of the services supplied by the applicant. To that end, each applicant seeking compensation must file a statement which, in essence, recites the number of hours worked and which contains a description of how each of those hours was spent. If there are disputed issues of fact relating to the application, an evidentiary hearing must be held.

Second, once the nature and extent of the services have been determined, the bankruptcy judge must access the value of those services, that is the reasonableness and necessity of the hours claimed and the hourly rate requested. A determination of the reasonableness and necessity of hours and rates requires consideration of the twelve factors first enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 171–719 (5th Cir.1974), a civil rights case, and made applicable to fee determinations in bankruptcy in *In re First Colonial Corp. of America*, 544 F.2d at 1298–1299. These are: (1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclu-

sion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; and, (12) Awards in similar cases. *Matter of U.S. Golf Corp.*, 639 F.2d at 1201; *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d at 877. A reasonable fee may then be determined by multiplying the reasonable hourly rate by the number of hours reasonably expended. *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d at 874.

Third, once the amount of reasonable compensation has been determined, the bankruptcy judge must briefly explain the findings and reasons upon which the award is based, including an indication of how each of the twelve factors affected the decision. *In re First Colonial Corp. of America*, 544 F.2d at 1300; *Matter of U.S. Golf Corp.*, 639 F.2d at 1202; *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d at 878.

The purpose of the last requirement is to make the review of the fee determination meaningful. What is expected is "... not a meaningless exercise in parroting and answering each of *Johnson's* twelve criteria, but some assurance that the court has arrived at a just compensation based upon appropriate standards." *Matter of U.S. Golf Corp.*, 639 F.2d at 1206, quoting, *Davis v. Fletcher*, 598 F.2d 469, 470–71 (5th Cir.1979). However the "court's order on attorney's fees only need be specific enough to allow meaningful review...." *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d at 878, n. 10. Even though a bankruptcy court's fee determination may not explicitly state which of the findings was made pursuant to which of the twelve factors, the fee determination is sufficient if it is otherwise "clear that the court considered those factors." *Id.*

*Lines, Inc.,* 752 F.2d 96, 105 (4th Cir.1985). It considered each Barber factor as well as "other considerations" in fixing the fees. One of the "other considerations" was Harman's claim that the fees in a bankruptcy case should be treated as contingent because of the possibility that the plan will fail and the fees will not be paid. Moreover, the bankruptcy judge presided over all of the proceedings in the ten cases at issue and was aware of both the nature and quality of the efforts expended by Harman and was in a better position than a reviewing court to gauge the value of his services. Although the bankruptcy court did not arrive at the fee award by a simple time/hourly rate calculation, its method was in accord with the general rationale of *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Chapter 13 bankruptcy cases often involve a number of relatively routine questions with which regular practitioners quickly become familiar, so they represent the type of cases where a court may well utilize factors in addition to the time reasonably expended and a reasonable hourly rate. *See Hensley,* 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9; *Arnold v. Burger King Corp.,* 719 F.2d 63, 67 (4th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 108, 83 L.Ed.2d 51 (1984); cf. *Ballard v. Schweiker,* 724 F.2d 1094, 1096–97 (4th Cir.1984) (quoting *Blankenship v. Schweiker,* 676 F.2d 116, 118 (4th Cir.1982)) (appropriate to consider all factors in, rather than apply strict time/hourly rate analysis to, "repetitive" black lung and social security disability benefit cases). Despite Harman's other objections to the fee awards, we cannot say that under all the facts and circumstances the awards were clearly wrong. *Barber,* 577 F.2d at 226.

*Harman v. Levin,* 772 F.2d 1150, 1153 (4th Cir.1985).

This Court is of the opinion that a bankruptcy court may allow an attorney representing a chapter 13 debtor an initial fee based on a "normal and customary" debt-based formula. This Court suggests that if a request for additional fees is made, that the "normal and customary" standard should be applied first and if the court finds that the

case, or work in it, falls outside of that standard, then the lodestar method should be applied to calculate whatever additional fees are appropriate.

## A. Lodestar

This Court respectfully disagrees with the Court of Appeals for the Sixth Circuit, where that court says:

we do not hold that the bankruptcy court can never consider the "normal and customary" services rendered in a chapter 13 bankruptcy. The court can legitimately take into account the typical compensation that is adequate for attorney's fees in chapter 13 cases, as long as it expressly discusses these factors in light of the reasonable hours actually worked and a reasonable hourly rate.

*Boddy v. United States Bankruptcy Court, Western District of Kentucky,* 950 F.2d 334, 338 (6th Cir.1991). The court goes on to say:

The bankruptcy court may also exercise its discretion to consider other factors such as the skills of counsel, the results obtained, and whether the fee award is commensurate with fees for similar professional services in non-bankruptcy cases in the local area. See *Harman,* 772 F.2d at 1152 n. 1 (citing twelve factors bankruptcy courts may consider).

*Id.* The court concludes:

In many cases, these factors will be duplicative if the court first determines the lodestar amount because the lodestar presumably subsumes all of these factors in its analysis of the reasonable hourly rate and the reasonable hours worked. At a minimum, however, the bankruptcy courts must expressly calculate the lodestar amount when determining reasonable attorney's fees.

*Id.* (citations omitted). If the analyses are so similar and produce such similar results, why then does this Court select one over the other? The problem is simple to identify; an answer is not.

The problem that a lodestar analysis would create in trying to apply it to a chapter 13 system is having to determine what is compensable where the vast majority of work in

a chapter 13 case is normal and customary.[3] Many questions surface. When an additional request for fees is filed, should all of the work performed then be recalculated through the lodestar formula ignoring the initial fee amount until it is simply subtracted from the lodestar result leaving the remaining lodestar amount as the additional fee? If certain attorney work is considered normal and customary for all chapter 13 cases, may any work of the type considered normal and customary be compensated in addition to the debt-based fee award even if requested in an additional "lodestar" fee application? Does normal and customary work become extraordinary simply because it is requested in an additional fee application? May this Court find that certain hours are not "hours reasonably expended" in a lodestar analysis because those hours represent only that which is normal and customary? If normal and customary work has been compensated in an initial fee award, may the same or even additional normal and customary work be compensated at a higher lodestar rate? If all of the work represented in the additional fee application represents normal and customary work that this Court considered to be compensated in its initial fee award, may the Court additionally compensate an attorney for more of, but nonetheless, same work?

From an administrative and case management standpoint, this Court cannot require attorneys to file detailed fee applications in all chapter 13 cases as the Court of Appeals of the Sixth Circuit seems to suggest. If the attorneys were required to file fee applications in every case and the Court were required to apply a full lodestar analysis to every one, the time required could not be justified by either. There were 11,059 chapter 13 cases filed in the Northern District of Alabama within the last 12 months. Attorney fees are awarded on a sliding scale. It is assumed that there are cases where chapter 13 practitioners are under compensated. It is also assumed that there are cases where

they are over compensated. Those who regularly practice in the area reach a balance. Good faith attempts are made by all involved to see that the attorneys are, over the long haul, adequately compensated and that the Debtors are fairly charged. A lodestar analysis in every case simply will not work in a district where about 90% of cases pending at any given time are chapter 13 cases. Certainly, the debt-based pay method is an administrative convenience, but it guarantees that attorneys are adequately compensated. There are other bankruptcy courts that agree.

After the *Boddy* opinion, the Bankruptcy Court for the Eastern District of Kentucky, a sixth circuit court, recognized that bankruptcy courts must be given latitude in reviewing chapter 13 fee requests. Chief Judge Joe Lee wrote for the court:

This court has no argument with the proposition that generally the lodestar formula could be applied in awarding fees under section 330 of the Code. In fact Rule 2016 of the Federal Rules of Bankruptcy Procedure appears to subsume the lodestar formula. But caution must be exercised, or the ease of application formula will replace the discretion of bankruptcy courts in fixing fees.

*In re Costello*, 150 B.R. 675, 678 (Bankr. E.D.Ky.1992). In *Costello*, Judge Lee concluded:

This is obviously an "ordinary run-of-the mill consumer" bankruptcy case; there was no novelty and little difficulty involved in the issues raised. Consequently, experienced counsel, but not expert, was required to properly perform the legal services rendered. In this district the customary fee for like work is $500.00 to $1,000.00, for an average of $750.00.

Excluding time involved in responding to the U.S. Trustee's motion, counsel's itemization shows 15 hours for time expended during a four-month period and 3.75 hours in projected services. A review of the

---

**3.** These matters are normal and customary only because the attorneys that regularly practice chapter 13 law make them such. To attorneys without such experience, these matters are far from normal and customary. But among those capable of this specialized practice, those who are setting the standard of "normal and customary," these matters are routine. Because those who set these standards are the more experienced, when the matters range outside of the normal and customary, the same attorneys are capable of handling those extraordinary matters.

itemization indicates that the expended time was spent in an initial conference with the debtors, preparing the petition and schedules, filing and amending those schedules, preparing for and attending the section 341 meeting of creditors, supplying additional documentation to the chapter 7 trustee, conferring in regard to the debtors' residence, and reviewing reaffirmation proposals. As for "court time," counsel lists one hour for conferring with debtors, appearing at the section 341 meeting, and conferring with the chapter 7 trustee on January 2, 1990. Counsel also lists one quarter of an hour for appearance on a motion for relief from stay on February 7, 1990. However, the minute sheet for that day does not indicate counsel for the debtors made an appearance at the hearing. The only out-of-the-ordinary activity by counsel appears to be communication with the debtors and counsel for Farmers Bank so that the bank could show the debtors' residence to a potential purchaser, a total of .75 hour. Thus, since the questions raised in this case were relatively routine ones with which regular practitioners quickly become familiar, "the time limitations imposed by the client or circumstances" were simply those imposed for routine matters, those devoid of any unusual factors. The amount in controversy was relatively nominal, and the results obtained were predictable.

Certainly the court does not question the experience, reputation, and ability of counsel. Furthermore, the court has no way of commenting on counsel's opportunity costs in pressing the instant litigation or counsel's expectations at the outset of the litigation.

The undesirability of the case within the legal community is nonexistent. In fact these "ordinary run-of-the-mill consumer" bankruptcy cases are coveted because the work is generally repetitive and does not involve much "down time," that is, time spent outside of the office.

The court has already commented that services were rendered within a six-month period, so the nature and length of the professional relationship between counsel and the debtors were typical. The court

also has commented that attorneys' fees in similar cases are between $500.00 and $1000.00, for an average of $750.00. According to an American Bankruptcy Institute ("ABI") study, the fee of $750.00 fixed by the court in this case conforms to maximum fee guidelines adhered to by many bankruptcy courts. American Bankruptcy Institute National Report on Professional Compensation in Bankruptcy Cases, May 1991, pp. 169–176. Therefore, the valuation of services in this case at $750.00 is buttressed by the ABI study.

*Id.* at 680–681. A similar conclusion was reached in *In re McClanahan,* 137 B.R. 73 (Bankr.M.D.Fla.1992) where Chief Judge Alexander L. Paskay wrote:

As noted earlier, this case involved no contested litigation. Most of the issues were determined by agreement, or by default. Thus, even if the hours stated were actually spent by Barnett and Isaak, a Chapter 13 case of this nature certainly does not merit an award of $4,626.00. Based on the following, the hourly rate of $150.00 charged by Barnett, based on his experience and compared with the hourly rate charged by other attorneys in the country, should not exceed $135.00. Further, the hourly rate of $200.00 charged by Isaak is equally inflated, especially when compared with the hourly rate charged by other attorneys in this community with substantially greater experience and who deal with much more complex issues, and should not be more than $175.00. Applying the lodestar principle in multiplying these amounts with the time reasonably spent on the services rendered, none of which really required any special skill or extensive research, the fee to be allowed in this Chapter 13 case shall not be more than $1,500.00.

*Id.* at 77–78.

 Both of the above bankruptcy decisions recognize the necessity of a bankruptcy court to review chapter 13 fee requests in a practical and judiciously economical manner. This of course does not relieve a bankruptcy court from applying an analysis of fee requests as the Circuit Court of Appeals for

the Eleventh Circuit requires. The court explained in *Grant v. George Schumann Tire & Battery Co.,* 908 F.2d 874 (11th Cir.1990).

In determining attorney's fees, a judge must 1) determine the nature and extent of the services rendered; 2) determine the value of those services; and 3) consider the factors laid out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) and explain how they affect the award. *Matter of First Colonial Corp. of America,* 544 F.2d 1291, 1299–1300 (5th Cir.), *cert. denied sub nom., Baddock v. American Benefit Life Ins. Co.,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). In the bankruptcy context, the judge must also consider whether the bankruptcy assets were administered as economically as possible and whether any of the services rendered were duplicative or non-legal. *Matter of U.S. Golf Corp.,* 639 F.2d 1197, 1201 (5th Cir.1981). Bankruptcy judges and district courts have broad discretion in determining attorney's fees for bankruptcy proceedings; the exercise of that discretion will not be disturbed absent abuse of discretion. *Matter of First Colonial,* 544 F.2d at 1298. Bankruptcy and district court judges may abuse their discretion by failing to apply proper legal standards, by failing to follow proper procedures, or by basing the award on findings of fact that are clearly erroneous. *Id.*

*Id.* at 877–878. *See* note 2 above.

This Court complied with the above as these analyses were applied on a collective basis to chapter 13 fee requests in the Northern District of Alabama. A collective decision was made to allow initial fees on a debt-amount basis. In a general review of this policy, this Court finds that chapter 13 initial fee awards are allowed because the initial work performed is in almost all instances reasonable and necessary.[4] And as a general matter, a consideration of the factors laid out in *Johnson* produces almost identical answers in almost all chapter 13 cases. For example, (1) the time and labor required to perform the services listed above is fairly

constant in most cases; (2) there are few novel and difficult legal questions; (3) the chapter 13 bar consists of practitioners who regularly practice in this Court and who regularly demonstrate the skills necessary to perform the legal services properly; (4) most attorneys are not precluded from other practice because the majority of their practices consist of chapter 13 matters; (5) customary fees for similar work in the community are market driven but do not vary to any substantial degree; (6) all initial fees in chapter 13 matters are fixed not contingent; (7) because the matters involved in these cases are not substantively complicated, neither the facts nor the clients, impose time limitations on attorneys; (8) the debt amounts involved, and the results obtained, in these cases varies, but that is considered in the initial fee award; (9) the level of experiences, reputations and abilities of most attorneys to perform the tasks necessary is similar; (10) few chapter 13 cases are undesirable; (11) all professional relationships between clients and attorneys will vary; (12) all initial awards in similar cases are equal.

Only in the extraordinary case does the response to any of these 12 factors change and when they do, this Court can easily recognize the unusual and adjust a fee accordingly. It is this distinguishing threshold that separates some chapter 13 cases from others.

This Court's application of the circuit court's standards and the *Johnson* 12 factors to the initial fee awards for chapter 13 cases satisfies the review required by the circuit court. Following this analysis this Court should be allowed to make a similar "normal and customary" determination of what additional work performed is extraordinary before considering, and then applying if necessary, a full lodestar analysis to that extraordinary work.

### B. Lodestar Exception

The lodestar approach to fee applications seems to have deviated from an original requirement of making a simple computation in every case of hourly rate times the number

---

4. If the Court discovers that the work performed does not qualify for a fee award, or the attorney does not perform work that compensation has been awarded for, the Court will require the attorney to refund a portion of the fees awarded.

of hours spent. Most courts seem to consider that the lodestar analysis requires a court to identify any hours disallowed and explain why each was disallowed. And until *Loranger v. Stierheim,* 10 F.3d 776 (11th Cir.1994) was decided, the Court of Appeals for the Eleventh Circuit seemed to agree. But in *Loranger* the court recognized an exception this Court believes applies in the chapter 13 context in this district. In recognizing a specific exception to a full lodestar review, the circuit court said:

> *Norman* is one of a long line of decisions in this circuit applying the rule that when hours are disallowed the court should identify the hours disallowed and explain why they are disallowed. The instant case evades the application of Norman. Implicit in the Norman hour-by-hour rule is the assumption that a district judge can feasibly and expeditiously engage in such a precise review. *Where fee documentation is voluminous, such as in the instant case, an hour-by-hour review is simply impractical and a waste of judicial resources.* Hence, the instant case falls outside the Norman hour-by-hour rule. This court has not previously addressed the question of whether fee documentation can be so voluminous as to render an hour-by-hour review impractical.

Other circuits have grappled with the question, and have almost uniformly held that where a fee application is voluminous, an hour-by-hour analysis of a fee request is not required. *See, e.g., Jacobs v. Mancuso,* 825 F.2d 559, 562 (1st Cir.1987); *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1202–03 (10th Cir.1986); *New York Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1146 (2nd Cir.1983); *Copeland v. Marshall,* 641 F.2d 880, 903 (D.C.Cir. 1980). In fact, given a voluminous application, most circuits recognize the utility of across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure. *See id.* This approach does not relieve district courts of the requirement to concisely but clearly articulate their reasons for selecting specific percentage reductions. *See Gates v. Deukmejian,* 987 F.2d 1392, 1399 (9th Cir.1992). Some circuits explicitly state that the adequacy of a court's explanation should be carefully scrutinized where substantial fees are involved. *See, e.g., Gates,* 987 F.2d at 1399; *In re Continental Illinois Sec. Litig.,* 962 F.2d 566, 570 (7th Cir.1992); *In re Fine Paper Antitrust Litig.,* 751 F.2d 562, 594–95 (3d Cir.1984). Regardless, a court's explanation must provide for meaningful review. *See, e.g., Gates,* 987 F.2d at 1400. *When faced with a massive fee application, however, an hour-by-hour review is both impractical and a waste of judicial resources. See Copeland* [*v. Marshall* ], 641 F.2d [880] at 903 [ (C.A.D.C. 1980) ].

> We adopt our sister circuits' position regarding review of voluminous fee applications. In a case like this one, where the fee motion and supporting documents are so voluminous, it is sufficient for the court to provide a concise but clear explanation of its reasons for the reduction. Accordingly, on remand the district court need not engage in an hour-by-hour analysis. Rather once the district court determines how many hours were actually devoted to the conduct of the federal litigation, it may then reduce that figure in gross if a review of the resubmitted fee request warrants such a reduction

*Loranger v. Stierheim* at 783 (footnote omitted) (emphasis added). This Court suggests that the above "individually voluminous" exception to the lodestar method be extended to the "collectively voluminous" applications that would be filed in heavily laden chapter 13 districts if a full lodestar fee analysis is required to be completed for each and every fee request. It is this exception, one considering practicality and judicial resources, that this Court believes applies in the chapter 13 fee application context. If the law requires a full lodestar analysis of every fee application requesting *additional fees,* then the law must require a full analysis of every fee request, including all initial debt-based fee awards. This of course would be impractical and a waste of judicial resources, and a circumstance that the circuit court has already rec-

ognized in a similar context. A workable system is possible.[5]

## C. Normal and Customary

If this Court employs a normal and customary analysis, how may it compensate attorneys where most of the work performed is normal and customary? Consider the major league baseball pitcher. Is he paid even when his team loses the game? Yes. Is he paid more if his team wins? Probably not. Is he paid more if he pitches a shut-out? Probably not. Is he paid more if he pitches a no-hit game? Maybe. Is he paid more if he pitches a perfect game? Probably yes. What is the normal and customary work for the pitcher? What is expected of him? There is some point between pitching in a game and pitching a perfect game that elevates the normal and customary to the extraordinary. There is a similar point in the chapter 13 context.

### (1) Routine Services

■ This Court considers certain services to be compensated through the initial debt-based fee. These include counseling with the Debtor; preparing and filing the chapter 13 petition and other documents; attending the first meeting of creditors' meeting and confirmation hearing; reviewing claims and objecting to claims if necessary; filing amendments, motions, adversary proceeding complaints, answers to complaints or any other required pleadings; and, attendance at all hearings when required. There may be others, but this list is a baseline from which to begin.[6] Work performed which considers not only whether the services performed are actual and necessary, but whether they are also either services required in addition to those for which compensation has already been awarded or were services that were anticipated but which required a significantly greater amount of time, effort and expense than anticipated, must be determined on a case by case basis.

### (2) System of Review

■ This court suggest a system of review of chapter 13 fees where:

1) Initial fees are awarded on a debt-based, normal and customary, standard. The actual standard used should meet the eleventh circuit court's general tests for fee reviews and it should be a standard that is reviewed periodically or at the request of an attorney seeking fees;

2) When an additional fee request is filed, the court's initial review should determine through the same "normal and customary"

---

5. The Court of Appeals for the Eleventh Circuit has not ruled on the specific issue before this Court but its specific recognition of the time and effort involved in reviewing voluminous fee applications convinces this Court that the position this Court takes in this order is legally and equitably correct. While there are both circuit and Supreme Court opinions requiring a full lodestar analysis of all fee applications, the Court of Appeals for the Eleventh Circuit recognized that an unbending lodestar in not practical in all situations. Future decisions will establish how far the circuit court's exception will extend.

6. If the lodestar approach is applied to all applications, it will guarantee that additional hours will be compensated even where the work performed is identical to that for which an initial award has already been allowed. Consider this Court's list of services that should be compensated through the initial debt-based fee. What if after the initial work is performed an application for additional fees is filed and, as in many cases, much of the time reflected in the application is for work identical to or substantially similar to the above listed items. A court cannot say that the work was not necessary, was not reasonable, or does not meet the 12 factors test or other test applied by reviewing courts. To do so would be

ludicrous as the court has already approved work of the same type in the initial fee award. Consequently, when the court applies a full lodestar analysis to this now "new work," the fees must be allowed unless the Court circumvents the analysis and suggests that the work performed was reasonable and necessary but that the number of hours should be substantially reduced because the work was of such a routine nature that it could have been performed much more efficiently. This side step would generate a lodestar fee when the hourly rate is multiplied against the now reduced number of hours, but it would be a lodestar fee far less than requested. A court should not reduce the number of hours in a fee request in order to arrive at an amount the court believes should be the appropriate amount. The more appropriate approach would be for the court to explain, in a straightforward manner, that most of the work performed was not of an unusual or extraordinary nature and that the fee awarded initially was adequate compensation for the work performed based on the general fee schedule in place in this district. The results would be similar, but the latter analysis would be understandable.

standard whether the work represented by the request is extraordinary; and,

3) If the court finds that there is extraordinary work, the court should employ a full lodestar analysis to the fee application to determine reasonable compensation.[7]

### III. Application

Applying the above test to the application before the Court, this Court finds that a portion of the work performed is outside the scope of the initial fee award and should be compensated with an additional fee award. The work that qualifies for additional compensation is that relating to the applicant's representation of the Debtor against a motion for relief filed by the IRS and on behalf of the Debtor's motion to modify her plan. While these matters would otherwise fall within the normal and customary category, this case is different. On January 9, 1995 this Court issued an opinion in the unrelated case of *In re Gore*, 182 B.R. 293, (Bankr. N.D.Ala.1995). The Court's general opinion there was that the three year periods of sections 507(a)(7)(A)(i) and 523(a)(7)(B) of the Bankruptcy Code were not suspended by the filing of a bankruptcy case. That opinion

had an effect on the instant case. The IRS motion for relief was filed after and in light of the Court's Opinion in *Gore*.

While every debtor's attorney that must face this issue in the future should not be compensated because the issue is no longer new, counsel in the instant case was the first or one of the first, to handle this matter. This Court finds that the time spent after this Court's tax liability ruling, and in relation to the Debtor's motion to modify and the IRS motion for relief from stay, is extraordinary, is work outside the "normal and customary" and as a block, should be compensated.

The lodestar formula should be applied to this block of extraordinary work. After an hour by hour analysis of the extraordinary work, and after a consideration of the *Johnson* 12 factors, the Court finds that the time spent by the applicant on the Debtor's motion to modify and on the IRS motion for relief from stay, constitutes reasonable hours spent.[8] The Court also finds that the applicant's normal hourly rates of $85.00 is reasonable. The total compensable time spent equals 19.50 hours.[9] At a rate of $85.00 per

7. When additional fees are requested, a preliminary hearing should be held at which the applicant argues in favor of the application. After the preliminary hearing the applicant should serve a copy of the application on the Chapter 13 trustee. The Trustee should within a short period of time make a written recommendation to the Court as to whether he considers any of the work represented by the application to be outside the "normal and customary" and if any, what specific work qualifies. After a review of this recommendation, if the Court makes a finding that there is work outside the "normal and customary," the applicant should serve a copy of the application on the Bankruptcy Administrator who should then review the identified extraordinary work portion of the application in the same manner he reviews all applications. After the Bankruptcy Administrator's review, or if after the Court's initial review the Court makes a finding that no work qualifies for extraordinary status, a final hearing should be held.

8. The Court's consideration of the *Johnson* 12 factors determined that: (1) the time and labor required to perform the services listed were extra; (2) there were significant novel or difficult legal questions in this case; (3) the applicant demonstrated the skills necessary to perform the legal services properly; (4) the applicant was not precluded from other practice because of this matter; (5) the applicant's fee was similar to the

customary fees for similar work in the community; (6) the fee in this matter was fixed not contingent; (7) there were time limitations on the applicant due to the consideration of the time periods of sections 507(a)(7)(A)(i) and 523(a)(7)(B) of the Bankruptcy Code; (8) the debt amounts involved, and the results obtained, in this case were similar to other cases; (9) the experience, reputation and ability of the applicant are exemplary; (10) the case was not undesirable; (11) the applicant's relationship with his client was a factor because the Debtor's husband had a separate pending chapter 13 case; (12) the award is not similar to awards in similar cases as most motions to modify and motions for relief from stay are compensated in an initial fee award.

9. These hours include:

| | | |
|---|---|---|
| 01/20/95 | Telephone conf. with Jean re: tax | |
| 01/23/95 | Attended hearing on Objection to Claim filed by IRS and VM from Jean re: tax returns. | 0.50 |
| 02/02/95 | Telephone conf. with Judy Wilson re: tax claim and faxed notice of hearing to her. | 0.50 |
| 02/07/95 | Telephone conf. with Wilma Jean re: tax returns (.2); VM from Judy Wilson (.1). | 0.30 |
| 02/08/95 | Telephone conf. with Judy Wilson re: Amendment to IRS Claim. | 0.20 |

hour, the amount compensable for the extraordinary work performed equals $1,657.50. An expense reimbursement of $3.00 for items the Court could determine are associated with the additional work and $255.00 for 3.0 hours spent preparing the fee application, should also be compensated for a total award on the application of $1915.50. Including the initial fee award $850.00, the total award in this case is $2765.50.[10]

The other work performed by the applicant, as described in the application, is not out of the "normal and customary," and under the above test does not qualify for fees in addition to that awarded as an initial fee. To that extent the application is denied.

It is therefore **ORDERED, ADJUDGED AND DECREED** that the *Application for Additional Attorney's Fees* is hereby **Approved** for an amount of $1915.50 and **Denied** to the remainder requested.

| Date | Description | Hours |
|------|-------------|-------|
| 02/09/95 | Telephone conf. with Jean re: 1991 Tax Return (.2); received Printout from Judy Wilson (.2). | 0.40 |
| 02/13/95 | Attended Objection to IRS Claim. | 1.00 |
| 02/27/95 | Attended hearing on Objection to IRS claim. | 0.50 |
| 03/27/95 | Telephone conf. with Sheila at Trustee's office re: tax claim. | 0.20 |
| 03/31/95 | Telephone conf. with Jean re: consolidation of cases and GMAC repossession (.2); Telephone conf. with Victor Jackson re: consolidation (.2). | 0.40 |
| 04/03/95 | Discussed amended IRS claim with Richard O'Neal (.2). | 0.20 |
| 04/04/95 | Telephone conf. with Judy Wilson re: IRS Amended Claim (.2); prepared Motion for Joint Administration and discussed with DDS (no time allotted). | 0.20 |
| 04/05/95 | Telephone conf. with Wilma Jean re: revised Motion to Consolidate (.5). | 0.50 |
| 04/05/95 | Reviewed Jamie Lee's case at Courthouse. | 0.30 |
| 04/06/95 | Telephone conf. with Richard O'Neal re: tolling of priority tax and Motion to Modify (.6). | 0.60 |
| 04/10/95 | Drafted Motion to Modify the Plan. | 0.80 |
| 04/12/95 | Telephone conf. with Richard O'Neal re: modification of plan or consolidation of cases. | 0.30 |
| 04/13/95 | Revised Motion to Modify Plan with DDS (.5); research on tolling priority of taxes (1.5). | 2.00 |
| 04/14/95 | Telephone conf. with Victor Jackson re: plan modification (.2); prepared Motion for Mailout (.3). | 0.50 |
| 04/18/95 | Received Notice of Hearing on Motion to Modify. | 0.10 |
| 04/25/95 | Received and reviewed Objection to Motion to Modify Plan and Motion for Relief from Stay filed by IRS. | 0.40 |
| 04/28/95 | Telephone conf. with Victor Jackson re: IRS Motion for Relief from Stay. | 0.30 |
| 05/04/95 | Reviewed IRS Motion and Objection and reviewed case law. | 0.50 |
| 05/05/95 | Telephone conf. with Richard O'Neal re: tolling of priority period and hearing on Monday. | 0.40 |
| 05/05/95 | Telephone conf. with Richard O'Neal re: tolling of priority period and hearing on Monday. | 0.40 |
| 05/08/95 | Prepared for and attended hearing on Motion to Modify and IRS Motion for Relief. | 1.80 |
| 05/11/95 | Met with Richard O'Neal re: case law on tolling—Turner and Gore cases ruled by Judge Cohen. | 0.50 |
| 05/14/95 | Reviewed cases decided by Judge Cohen and Judge Mitchell and prepared for hearing on Monday. | 2.00 |
| 05/15/95 | Prep. for hearing (.5); attended hearing on Motion for Relief from Stay in Jimmie's case and attended hearing in Jean's case afterward (1.5). | 2.00 |
| 05/17/95 | Memo to AMT, DDS, MSL and TST re: results of modification (.5); letter to Jean re: same (.3). | 0.80 |
| 05/19/95 | Telephone conf. with Bonnie re: calling Victor Jackson. | 0.20 |
| 05/30/95 | Reviewed Consent Order (.2); Telephone conf. with Richard re: change to one of Orders (.3). | 0.50 |

10. The total request for this case is $4,821.50 for services rendered and $62.37 for out of pocket expenses. Additional compensation and expenses requested are $3,013.29. The Bankruptcy Administrator, with the applicant's concurrence, recommended additional compensation and expenses of $2,650.00.