In re **BIG RIVERS ELECTRIC CORPORATION, Debtor.**

**Willamette Management Assoc., Appellant,**

v.

**Big Rivers Electric Corporation, Appellee.**

No. 96–41168.

CIV. A. 4:99CV115M.

United States District Court, W.D. Kentucky, Owensboro Division.

Oct. 29, 1999.

---

Culver V. Halliday, Laura Day DelCotto, Stoll, Keenon & Park, Louisville, KY, for appellant.

Michael A. Fiorella, Frank Stainback, Jr., Felicia S. Turner, Sullivan, Mountjoy, Stainback & Miller, P.S.C., Owensboro, KY, Mark S. Kaufman, Laura F. Nix, Russell A. Tolley, Long, Aldridge & Norman, Atlanta, GA, for appellee.

## ORDER

McKINLEY, District Judge.

This matter is before the Court on appeal from the Bankruptcy Court. Willamette Management Associates (Willamette) applied for professional fees and expenses of $216,289.71 and the Bankruptcy Court only awarded it $108,144.86—50% of the amount for which it applied. The Court finds that the Bankruptcy Court abused its discretion in not affording Willamette an opportunity for a hearing on its fee application. For that reason and those stated below, the Court reverses the decision of the Bankruptcy Court and remands for further proceedings consistent with this order.

11 U.S.C. § 330(a) requires notice and a hearing prior to the award of compensation to professionals. While it is not exactly clear what type hearing is required, 11 U.S.C. § 102(1) states that the requirement of a hearing means there shall be "such opportunity for a hearing as is appropriate in the particular circumstances." It is clear from the record that the Bankruptcy Court anticipated an evidentiary hearing when it stated "that if it appeared necessary at a later date to introduce witnesses to prove up the fee applications, the Court would extend an opportunity at that time to counsel to do so." (R. 6: Transcript of 12/15/98 Hearing at 5–6) Despite that assurance, the Bankruptcy Court failed to extend that opportunity.

The Bankruptcy Court took issue with the lack of detail relative to some entries for services rendered and the length of some telephonic conferences. The Bankruptcy Court concluded that it could not evaluate the reasonableness and necessity of those charges without the required detail. In ruling on the Motions to Alter, Amend or Vacate filed by some of the "disgruntled professional firms" the Bankruptcy Court recognized that one of the applicants (the record is not clear which one) "went to great efforts to correct some of the deficiencies of its Fee Application." (R. 9) Despite that effort, the Bankruptcy Court found it was "too late" in coming; that the professionals knew from the inception "what was required of them" and declined "to engage in further review of billing information that the professionals knew should have been submitted all along." *Id.*

There is nothing in the record to suggest that Willamette did not make a good faith attempt to comply with the requirements of the Bankruptcy Court with respect to fee applications. The Court agrees with the rationale of the Third Circuit in a similar case, *In Re Busy Beaver Bldg. Centers, Inc.* 19 F.3d 833 (3rd Cir. 1994), wherein it discussed the hearing requirement:

In any event, we are convinced that if the bankruptcy court plans to disallow certain items of compensation, § 330(a) on its face first contemplates the applicants's right to a hearing. We understand that a court may simply wish to note its specific concerns, if any, and allow the fee applicant a reasonable opportunity to supplement his or her fee application in response thereto before holding an oral hearing, as hearings on a routine matter like compensation for services might overwhelm already swollen calendars. But if the court does disallow fees of a "good-faith applicant," the Code—and perhaps even the dictates of due process—mandates that the court allow the fee applicant an opportunity, should it be requested, to present evidence or argument that the fee application meets the prerequisites for compensation; canons of fairness militate against forfeiture of the requested fees simply because the court's audit of the application uncovers some ambiguity or objection. By good faith applicant we mean to refer to a fee applicant who reasonably and in good faith attempts to comply with the applicable rules governing the format and substance of fee applications.

To make the hearing meaningful, the court should first apprise the applicant of the particular questions and objections it harbors, a role which the adversary in a statutory fee case would typically play. Contrary to a typical adversarial proceeding, when the bankruptcy court clothed in its administrative robe fulfills its duty to review a fee application without the applicant being present, the applicant cannot possibly know what evidence or legal theories the court is contemplating when it decides to disallow certain fees. Unless the applicant is afforded an opportunity to rebut or contest the court's conclusions, the applicant would unfairly and undesirably be deprived of the chance to respond to and assuage the court's questions and concerns. Be-

sides, the bankruptcy bar might well react to a regime offering the applicant no chance to respond to the court's concerns by spending an inordinate amount of time preparing overly detailed fee applications, which time might be billable to the estate, in an effort to anticipate all the idiosyncracies and inconsistencies of review the divers bankruptcy judges might exhibit.

*Id.* at 845–847. (Citations omitted)

In the absence of any evidence that Willamette was not a good-faith applicant, the Court believes that the Bankruptcy Court should have allowed Willamette an opportunity to be heard, in some fashion, in response to the particular objections which the Bankruptcy Court had to its fee application. The Bankruptcy Court has in other cases not been hesitant to reconsider requests for disallowed expenses upon the receipt of a supplemental, properly itemized statement from the fee applicant. *See In Re Belknap, Inc.* 103 B.R. 842, 844–845 (Bkrtcy.W.D.Ky.1989). It is not clear why it was hesitant to do so in this case.

■ Likewise, it is not clear why the Bankruptcy Court applied a 50% across-the-board reduction to Willamette's fee application. Although the Bankruptcy Court expressed disgust generally at Big Rivers' management and its willingness to spend money like it was "free water" and referred to the fees incurred by the various professionals as exorbitant, and in some cases, yielding no benefit to the estate, no specific professional was singled out during that portion of the court's decision. Nothing specific was leveled at Willamette other than the objections to lack of detail and to a few instances of excessive and unnecessary expenses (some of which the court acknowledged there could be a perfectly logical explanation for). According to Willamette, the charges brought into question by the court amounted to less than $5,000.00, yet, the court cut the fees by over $108,000.00. Willamette argues that such an approach constitutes legal

error in light of the Sixth Circuit's express approval of the lodestar method.

This Court too has struggled with fee applications and the lodestar method and appreciates the fact that the duty to review fee applications is "a thankless, onerous burden, one which consumes a significant share of a bankruptcy judge's time." *In Re Busy Beaver Bldg. Centers, Inc.* at 843. The temptation to apply across-the-board cuts is great. Some courts have carved out an exception to the lodestar approach where a fee application is voluminous. In such cases, an hour-by-hour analysis of a fee request is not required. These courts recognize the utility of across-the-board percentage cuts. *See In Re Watkins,* 189 B.R. 823, 832 (Bkrtcy. N.D.Ala.1995). However, even in the courts which allow for across-the-board cuts, the reasons for selecting the specific percentage reduction must be clearly articulated. *Id.* In this case, the Bankruptcy Court did not clearly articulate its reason for choosing 50% across-the-board cut in Willamette's fee request.

Although the propriety of across-the-board percentage cuts is questionable considering this circuit's adherence to the lodestar method, the Court is reluctant at this juncture to hold that across-the-board percentage cuts are legally impermissible in every instance, particularly since there is no contrary argument being advanced by this appeal. However, it is not necessary yet to reach that issue since the case is being remanded on other grounds. If, after further review, the Bankruptcy Court remains convinced that an across-the-board percentage cut is appropriate in this case, it shall state specifically the legal and evidentiary basis for doing so and shall clearly articulate its reasons for choosing any such percentage chosen.