In re Sandy Lynn HOWELL, Debtor.

Bankruptcy No. 98–02388–8C3.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 20, 1998.

**280**

Sandy Lynn Howell, Brandon, Florida, for debtor.

David A. Garside, Tampa, Florida, for debtor.

Terry Smith, Bradenton, Florida, trustee.

---

### ORDER ON FEE APPLICATION OF DEBTOR'S COUNSEL

**C. TIMOTHY CORCORAN, III,**
Bankruptcy Judge.

This Chapter 13 case came on for consideration of the fee application of debtor's counsel. The application seeks approval of a fee of $1,500, $750 of which was paid by the debtor before the filing of the case. Thus, the application seeks an additional $750 to be paid to counsel through the plan after confirmation of the debtor's Chapter 13 plan.

■ Although no party in interest objected to the application, the court nevertheless has a special obligation to examine the requested fees. *In re Bush,* 131 B.R. 364, 365 (Bankr.W.D.Mich.1991). This is the case, of course, because in Chapter 13 cases no party has an economic incentive to object. *Id.*

**I.**

■ In a Chapter 13 case, the debtor keeps the debtor's assets and repays creditors a portion of the debts over time from the debtor's post-petition income. In some cases, including this one, the debtor pays counsel a portion of counsel's fee before the case is filed. Counsel then receives the remainder of the fee over time from the debtor's post-petition income paid into the Chapter 13 plan.

■ Using post-petition income and a confirmed plan, a Chapter 13 debtor can restructure debt in ways not possible in Chapter 7 liquidation case. For example, a Chapter 13 debtor may cure and reinstate home mortgage defaults, pay non-dischargeable unpaid taxes over time, and pay a car, furniture, or other secured loan based on the current value of the collateral rather than on the higher remaining principal balance.

In a typical, routine Chapter 13 case, the debtor's lawyer prepares and files the petition, lists, schedules, and plan, attends the Section 341 meeting of creditors, and attends the confirmation hearing. Depending on the case, counsel may also do one or more of the following: attend a hearing on one or more creditors' motions for relief from stay caused by post-petition payment defaults on the home mortgage or a car loan and negotiate on the spot the terms of an adequate protection order to resolve the matter; file a motion or two to determine the secured status of claims that will be resolved by agreement or default; file a motion or two to avoid liens that will be resolved by agreement or default; file a claim or two on behalf of secured creditors who did not file claims; and file one or more objections to claims that will again be resolved by agreement or default.

Although debtors can receive substantial benefit in Chapter 13, the cases themselves are generally routine and do not present sophisticated or complex legal problems. Indeed, the cases are usually substantially identical with only the names and the numbers being different. Attorneys, therefore, typically handle them in standardized and systematized ways and use paralegal personnel to perform much of the work. As a consequence, the cases can be quite lucrative.

"In fact these 'ordinary run-of-the-mill consumer' bankruptcy cases are coveted because the work is generally repetitive and does not involve much 'down time,' that is, time spent outside of the office." *In re Watkins,* 189 B.R. 823, 830 (Bankr.N.D.Ala.1995).

## II.

The file in this case reflects a simple, standard, and routine Chapter 13 case with no unusual aspects, problems, or challenges that required extraordinary attorney time, effort, or skill. Counsel prepared the petition, schedules, lists, and plan, attended the Section 341 meeting of creditors, and attended the confirmation hearing. In addition, counsel attended a hearing on the trustee's motion to dismiss for failure to make plan payments. The debtor cured this delinquency at or before the hearing.

Under the confirmed plan, the debtor pays to the Chapter 13 trustee a total of $9,252 over 36 months. This amount will be used to pay a small fee to the trustee, the remainder of counsel's fee, a prepetition mortgage arrearage, and about 20 percent of the amount of the debtor's unsecured indebtedness.

## III.

■ In considering fee applications, the bankruptcy court typically uses the lodestar method. *Grant v. George Schumann Tire & Battery Co.,* 908 F.2d 874, 879 (11th Cir. 1990). The lodestar method is based on multiplying the reasonable number of hours expended on services by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). After calculating the fee according to the lodestar method, the court may consider other factors to adjust the fee upward or downward. *Id.* These factors are set forth in Section 330 of the Bankruptcy Code and in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), which was made applicable to bankruptcy cases in *American Benefit Life Insurance Co. v. Baddock (In re First Colonial Corp. of America),* 544 F.2d 1291, 1298–1300 (5th Cir.), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). The court should award the full lodestar amount only if the results obtained are excellent. *Hensley* at 435, 103 S.Ct. 1933.

■ Awarding fees in a bankruptcy case is typically a three-step process. To begin the fee award process, counsel has the initial responsibility to file an application containing sufficient documentation of the amount of time spent and the type of work performed. *First Colonial Corp. of America* at 1299. The court need *not* conduct a hearing unless there are disputed fact issues requiring resolution. *Id.* at 1300.

Next, "[o]nce the nature and extent of the services rendered have been determined, the bankruptcy judge must assess the value of those services. Because judges are familiar with the fees charged by the legal profession and experienced at gauging the quality of legal work, no expert opinion evidence is required on this issue...." *Id.*

Finally, the court must explain its award. *Id.* In explaining its award, however, the court is not required to perform "an hour-by-hour review" when it is "impractical and a waste of judicial resources." *Loranger v. Stierheim,* 10 F.3d 776, 783 (11th Cir.1994).

■ Although the bankruptcy court typically uses the lodestar method in awarding fees, the court need not use the lodestar method when the court finds the method inappropriate in the circumstances. *Chamberlain v. Kula (In re Kula),* 213 B.R. 729, 736 (8th Cir. BAP 1997). Routine Chapter 13 cases are not appropriate cases for the use of the lodestar method. Instead, they are much more susceptible to a standard rate or flat, fixed rate approach, based upon all the relevant legal factors. Chapter 13 cases are standardized and systematized, and much of the work is capable of performance by paralegals. These cases are typically handled in high volume practices. Although counsel may lose a few dollars on one case when a standard, fixed fee is approved in a routine case, counsel will make up those dollars in another case. *In re Watkins,* 189 B.R. 823, 829 (Bankr.N.D.Ala.1995). In the marketplace of this community, this is precisely the foundation upon which most attorneys accept representation and charge their clients in Chapter 13 debtor cases.

282

This approach also has the advantage of simplicity, efficiency, and economy. The court deals with a high volume of Chapter 13 cases every week, each one of which involves a relatively modest attorneys fee.[1] As a practical matter, the court has no ability to provide individualized, microscopic treatment to small applications in literally thousands of cases.[2] Not only is this standard, fixed fee approach to awarding fees in routine Chapter 13 cases a practical solution to this high volume problem, it also carries the benefit of certainty for lawyers, debtors, creditors, and the Chapter 13 trustee. Many—if not most—bankruptcy courts around the nation use such standardized fees in Chapter 13 cases as established by individual judges or as promulgated by the court as a whole.[3]

Accordingly, the court has adopted a standard, fixed fee to be used in the truly routine case, leaving for the more detailed lodestar method only the few Chapter 13 cases that deviate from the norm. As a rule of thumb, therefore, the court routinely allows an attorneys fee of up to $1,300, inclusive of costs (except clerk's filing fees), in standard Chapter 13 cases when a portion of the total fee is to be paid through the plan after confirmation and when counsel files a fee application requesting a total fee greater than $1,000. This standard fee is based upon an applica-

tion of all the factors identified in the case law,[4] is consistent with what the other judges in the Tampa and Ft. Myers divisions allow,[5] and is in fact somewhat higher than the fees most attorneys representing Chapter 13 debtors charge in this community for such services.[6] The court can adjust the amount of this standard fee in the future as circumstances require so that it continues to reflect fairness, consistency, and economic reality in the marketplace.

IV.

 Because this case is plainly a routine case for which the court's rule of thumb standard fee is intended, the court grants the fee application in the amount of $1,300, which represents an additional $550 that can be paid to counsel through the confirmed Chapter 13 plan. In doing this, the court notes that the fee allowed represents more than 14 percent of the total funds to be paid by the debtor into the confirmed plan, a substantial percentage. The court finds that this fee represents a reasonable and fair fee for the services rendered in the circumstances of this case.

1. During the 12–month period, October 1997 through September 1998, for example, there were 4,023 Chapter 13 cases filed in the Tampa division of the court. I was assigned one third of those cases.

2. Even under the lodestar method, the court is not required to perform "an hour-by-hour review" when it is "impractical and a waste of judicial resources." Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir.1994). The high volume of applications in substantially identical, routine Chapter 13 cases describing the same routine tasks makes hour-by-hour review both impractical and a waste of judicial resources.

3. Although most of these standardized fee schedules are not contained in published decisions, some are. See, e.g., In re Watkins, 189 B.R. 823 (Bankr.N.D.Ala.1995); Walton v. Jones (In re Shirley), 184 B.R. 613 (Bankr.N.D.Ga.1995); In re Orris, 166 B.R. 935 (Bankr.W.D.Wash.1994); In re Bush, 131 B.R. 364 (Bankr.W.D.Mich. 1991); In re Ashton, 92 B.R. 254 (Bankr. S.D.Ohio 1988); In re Waddell, 21 B.R. 452 (Bankr.N.D.Ga.1982).

4. These factors are accurately and ably analyzed in In re Watkins, 189 B.R. 823, 831 (Bankr. N.D.Ala.1995). The court adopts that reasoning.

5. I regularly confer with my colleagues to learn what they are doing in awarding fees in routine Chapter 13 cases and to insure that the amounts of my awards are generally consistent with theirs. My colleagues tell me that my $1,300 rule of thumb is consistent with the amounts they allow. My observation verifies what they tell me. I recently reviewed 79 fee awards made by colleagues in Tampa in routine Chapter 13 cases. The average award was $1,212.03.

6. My observation is that lawyers generally charge $800 to $1,200 to represent Chapter 13 debtors in this community. In 123 Chapter 13 cases that I recently confirmed, the debtors' attorneys in all but 12 received their full fees prior to the filing of the cases. The fees generally ranged from $800 to $1,200, with lows of $199, $200, $300, $500, and $600. Only eight fees exceeded $1,300, including a non-routine federal tax case in which the fee was $2,750. The average fee, including the non-routine tax case, was $988.81.