**In re Henry A. SZYMCZAK and Becky Szymczak, Debtors.**

**Bankruptcy No. 98–35341 (RTL).**

United States Bankruptcy Court, D. New Jersey.

March 3, 2000.

Jean L. Markey, Malsbury & Armenante, P.A., Allentown, NJ, for Debtors.

## OPINION

RAYMOND T. LYONS, Bankruptcy Judge.

Malsbury & Armenante, P.A. (the "Applicant"), counsel to the chapter 13 debtors, Henry A. and Betsy Szymczak (the "Debtors"), filed a fee application seeking an allowance of fees in the amount of $9,691.25 and reimbursement of expenses in the amount of $266.62. The court issued an order awarding Applicant a total allowance of $2,250.00 for fees and full reimbursement of expenses. Thereafter, Applicant filed a motion for reconsideration and a hearing was held on November 9, 1999. The court granted Applicant's motion for reconsideration and took the issue of fees under advisement.

For the reasons set forth below, this court revises the allowance of fees to $3,350.00 and full reimbursement of expenses for Applicant's representation of the Debtors. The balance of Applicant's fee request is denied.

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. §§ 157(a) and (b)(1) and the Standing Order of Reference from the United

States District Court for the District of New Jersey dated July 23, 1984 referring all cases under Title 11 of the United States Code to the bankruptcy court. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O).

### FACTS

On April 28, 1998, Debtors filed a voluntary chapter 13 bankruptcy petition to prevent the threatened foreclosure of their condominium. Approximately fifteen months later, on July 20, 1999 the court confirmed the Debtors' chapter 13 plan. At the time of confirmation, Applicant estimated its attorneys' fees at $7,000.00 which would be paid through the Debtors' plan. Because Applicant's fee request exceeded $1,500.00, the local bankruptcy rules required Applicant to file a detailed fee application for review and approval by the court.[1]

On June 29, 1999, Applicant submitted the instant fee request to the court. The fee application covered the time period from Debtors' initial meeting with Applicant to discuss filing bankruptcy until July 6, 1999, shortly before the originally scheduled confirmation hearing.[2] Applicant was initially paid a $1,200.00 retainer by the Debtors and sought court approval of a total fee allowance of $9,691.25 for services rendered and reimbursement of $266.62 for out-of-pocket costs. Applicant's fee request included approximately fifty four hours of attorney time at an average rate

of $180.00 per hour, and one hour of paralegal time at $65.00 per hour.

After reviewing the instant fee application, the court entered an order awarding Applicant $1,050.00 ($2,250.00 less the $1,200.00 retainer previously paid by Debtors) for attorney fees and $266.62 for reimbursement of out-of-pocket costs. Upon learning of the bankruptcy court's significant reduction to its fees, Applicant filed a motion for reconsideration of its fee application. Applicant's brief in support provided a background on the Applicant and its over twenty years of experience with chapter 13 cases. Applicant's letter brief further stated that "[b]ecause the Szymczak case involved a number of additional tasks which are not part of the typical chapter 13 case but were necessary in this case, we feel the number of hours billed was reasonable."

The bankruptcy court conducted a hearing on Applicant's motion for reconsideration. At the hearing, Applicant reiterated its position that the Debtors' case was not the typical chapter 13 case and that the court's reduction in fees was too severe and unwarranted. Applicant argued that the Debtors' case involved an installment loan contract for Debtors' residence, rather than a typical mortgage, requiring Applicant to perform additional research and to conduct extensive negotiations with the vendors. Applicant also informed the court that Mrs. Szymczak suffered a se-

---

1. The Local Rules of Bankruptcy Practice for the United States Bankruptcy Court for the District of New Jersey provide:

 Rule 2016–1 COMPENSATION OF PROFESSIONALS

 (j) *Chapter 13.* If the fee of the attorney for the debtor disclosed pursuant to Fed. R.Bankr.P. 2016(b) exceeds $1,500.00, the attorney for the debtor shall file and serve on the chapter 13 trustee and the debtor an application for allowances not less than 7 days before the confirmation hearing.... The Court may rule upon the application at the time of the confirmation hearing or after notice and hearing.

 Each year approximately 15,000 chapter 13 cases are filed in the United States

Bankruptcy Court for the District of New Jersey. Because of the burden it would place on the court, debtor's counsel in chapter 13 cases are only required to file detailed fee applications if their fee exceeds $1,500.00.

2. Applicant included four hours of attorney time (at a rate of $125.00 per hour) as an estimate of the time necessary "to wrap up case and tie up loose ends." The estimation was submitted so that Applicant could comply with the requirements of D.N.J. Local Bankruptcy Rule 2016–1(j). See note 1 supra. The inclusion of this additional time also alleviated the need for Applicant to file a supplemental fee application for post-confirmation services.

vere mental illness which made this case particularly difficult and necessitated further work by Applicant to save the Debtors' home.

At the hearing the court asked Applicant if it was appropriate for a bankruptcy court to consider how much a debtor would have to pay another lawyer who took their bankruptcy case on a fixed fee basis, instead of on an hourly fee basis. In response, Applicant agreed that it would be appropriate for the court to consider such information, but under the circumstances of this particular case, it is doubtful that another attorney would have taken the Debtors' case on a fixed fee basis because it required so much work above and beyond the typical chapter 13 case. Applicant believed many attorneys would have allowed this case to fall through the cracks, whereas Applicant saved the Debtors' residence and achieved confirmation of a plan of reorganization.

### DISCUSSION

▮ The court has to determine the amount of a reasonable fee for an attorney representing a debtor in a chapter 13 bankruptcy case. 11 U.S.C. § 330(a)(4)(B)[3] specifically authorizes bankruptcy courts to allow reasonable compensation to the debtor's attorney in a chapter 13 case.[4] "[T]he bankruptcy court has a duty to review fee applications, notwithstanding the absence of objections by the United States trustee, creditors, or any other interested party...." *In re Busy Beaver Bldg. Ctrs., Inc.,* 19 F.3d 833, 841 (3d Cir.1994). This overriding obligation

to examine fee applications derives from the court's commitment to "protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors." *Id.* at 844. "Although the Court has a duty to fairly compensate counsel it also has a responsibility not to overly compensate attorneys to the detriment of the debtor and the creditors." *In re Taylor,* 100 B.R. 42, 45 (Bankr.D.Colo. 1989).

▮ The court's responsibility to protect the estate is especially important in chapter 13 cases where there is little motivation for a debtor, or creditors, to object to a particular fee allowance.[5] "From the point of view of the debtor, the amount to be paid under the plan is fixed at confirmation, and it is of no real consequence to the debtor whether the money is paid to the attorney or the creditors. In addition, there is little or no economic incentive for most creditors in Chapter 13 cases to object to fees; the cost of the objection will likely exceed any additional distribution they may receive." *In re Yates,* 217 B.R. 296, 300 (Bankr.N.D.Okla.1998) (citing *In re Copeland,* 154 B.R. 693, 697–98 (Bankr. W.D.Mich.1993)). See also *In re Stromberg,* 161 B.R. 510, 517 (Bankr.D.Colo. 1993) (debtors in chapter 13 cases have no interest in objecting to their attorneys' fees because all disposable income contributed by debtors to fund their plan is paid to either their attorney or their creditors).

**3.** All statutory references contained herein are to the Bankruptcy Code, 11 U.S.C. § 101 et seq., unless otherwise indicated.

**4.** Section 330(a)(4)(B) of the Bankruptcy Code provides:
(B) In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

**5.** In *Busy Beaver,* 19 F.3d at 843, the court of appeals asserted that "[t]he debtor will often not object to its attorney's fee application because the fees will frequently be derived from its creditors' award rather than its own asset or in any case it may be 'in no position to make an objective judgment as to the value of the legal services involved, [and it may lack the] inclination to object to whatever fee is requested by the attorney who has made it possible for [it] to continue business.'" (citations omitted).

## STANDARD FOR REVIEWING FEE APPLICATIONS

As guidance for calculating legal fees, the Supreme Court concluded in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." This approach is commonly known as the lodestar method. "After determining the number of hours reasonably expended, the [ ] court must examine whether the requested hourly rate is reasonable. Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.1990) citing *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

The bankruptcy court in *In re Patronek*, 121 B.R. 728, 731–32 (Bankr.E.D.Pa.1990), concluded that the lodestar is, at bottom, a means of attempting to put a market rate on particular legal services in a lawsuit, and that a lodestar analysis is unnecessary and may in fact be misleading when a real market rate for certain routinized services exists and can be used directly as a means of measurement of the market rate. Simple use of the lodestar method for determining fees for debtors' attorneys in chapter 13 cases does not lead to an acceptable and reasonable outcome. In response to this predicament, bankruptcy courts have developed a method for measuring fees that combines an initial fixed fee standard for certain normal and customary work performed by debtors' counsel, with the traditional hourly fee method routinely used in other areas of the legal profession. This alternative approach adequately compensates attorneys for chapter 13 debtors, while adhering to the spirit and purpose of the Bankruptcy Code.

In an early opinion, the Sixth Circuit Court of Appeals concluded in *In re Boddy*, 950 F.2d 334 (6th Cir.1991) that bankruptcy courts must utilize the lodestar method for determining reasonable compensation for debtors' attorneys in chapter 13 cases. The court contended that "[w]hile the bankruptcy courts certainly know the typical compensation paid for legal services in a Chapter 13 case better than this court, the establishment of a fixed fee for certain 'normal and customary' services is directly contrary to the plain 'actual, necessary services rendered' language of 11 U.S.C. § 330." *Id.* at 337. Ultimately, the Sixth Circuit held that a bankruptcy "court can legitimately take into account the typical compensation that is adequate for attorney's fees in Chapter 13 cases, as long as it expressly discusses the[ ] [lodestar] factors in light of the reasonable hours actually worked and a reasonable hourly rate." *Id.* at 338.

The Third Circuit Court of Appeals in *Busy Beaver*, 19 F.3d at 856, examined the *Boddy* opinion and concluded that "contrary to the apparent view of the Sixth Circuit Court of Appeals, § 330 by no means ossifies the lodestar approach as the point of departure in fee determinations." Furthermore, the Fourth Circuit Court of Appeals observed that "[c]hapter 13 bankruptcy cases often involve a number of relatively routine questions with which regular practitioners quickly become familiar, so they represent the type of cases where a court may well utilize factors in addition to the time reasonably expended and a reasonable hourly rate." *Harman v. Levin*, 772 F.2d 1150, 1153 (4th Cir.1985).

Representing chapter 13 debtors has become its own area of specialty in the field of bankruptcy law. Some bankruptcy lawyers have extremely lucrative chapter 13 practices. Each year these attorneys file hundreds of chapter 13 cases. With the arrival of specialized computer software for bankruptcy and because of the increased use of skilled bankruptcy paralegals, debtors' attorneys are now able to file and confirm chapter 13 cases with minimal investment of attorney time. See *In re Howell*, 226 B.R. 279, 280 (Bankr.M.D.Fla.

1998) (bankruptcy attorneys typically handle chapter 13 cases in standardized and systematized ways and rely on paralegals to perform a considerable amount of the work).

It is likely chapter 13 cases are being filed and confirmed with fewer than five hours of attorney time. Despite this small investment of time, however, these attorneys are able to achieve the very results their clients sought, i.e., relief from oppressive debt. Under these types of circumstances, use of the lodestar method would not adequately compensate an attorney who was only required to invest a few hours of time because of his familiarity or understanding of chapter 13, while overcompensating an inexperienced attorney who was required to invest considerable time or who performed inefficiently. As one bankruptcy court found,

> [r]outine Chapter 13 cases are not appropriate cases for the use of the lodestar method. Instead, they are much more susceptible to a standard rate or flat, fixed rate approach, based upon all the relevant legal factors.... Although counsel may lose a few dollars on one case when a standard, fixed fee is approved in a routine case, counsel will make up those dollars in another case. In the marketplace of this community, this is precisely the foundation upon which most attorneys accept representation and charge their clients in Chapter 13 debtor cases.

*Id.* at 281 (citing *In re Watkins,* 189 B.R. 823, 829 (Bankr.N.D.Ala.1995)). In his treatise on chapter 13, Judge Keith M. Lundin stated:

> Attorneys' fees are hard to fix on a case-by-case basis in Chapter 13 cases. The normal approach—reasonable hourly rate multiplied by hours necessarily expended, often called the "lodestar" method—breaks down in Chapter 13, especially in a high volume Chapter 13 practice. Some of the best Chapter 13 debtors' attorneys operate computerized offices with specialized paralegals who manage a large volume of Chapter 13 cases efficiently. Two hours or fewer of

attorney's time and a like number of hours of paralegal time in an experienced debtors' attorney's office can produce excellent results in a "typical" Chapter 13 case. Another lawyer who irregularly handles Chapter 13 cases might invest eight or 10 hours to produce the same or less desirable results. Applying normal multipliers would penalize the debtor's counsel who handles a high volume of Chapter 13 cases by reducing the fee in each case while rewarding the irregular or inefficient practitioner with higher fees.

2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 7.31, at 7-74 to 7-75 (2d ed.1994).

"The problem that a lodestar analysis would create in trying to apply it to a chapter 13 system is having to determine what is compensable where the vast majority of work in a chapter 13 case is normal and customary." *In re Shamburger,* 189 B.R. 965, 969-70 (Bankr.N.D.Ala.1995). The work involved in chapter 13 cases becomes normal and customary to these attorneys because they are invariably providing substantially similar services for their clients. In other words, "[t]hese matters are normal and customary only because the attorneys that regularly practice chapter 13 law make them such." *Id.* at 970 n. 3.

█ The facts and the parties may differ, but the underlying legal issues involved in chapter 13 cases involve the same, or substantially similar, legal issues. The bankruptcy court in *In re Patronek,* 121 B.R. at 731, "believe[d] that most Chapter 13 bankruptcies—and most consumer bankruptcies in general—are indeed repetitious and that the labors required to handle them are, in most instances, not varied by the particular facts of an individual consumer's case." In the end the bankruptcy court "conclude[d] that the handling of a Chapter 13 bankruptcy case is the paradigm of a repetitious sort of legal task, the value of which

can be directly valued by review of the marketplace." *Id.* at 732.[6]

■ Because use of the lodestar method for calculating legal fees does not achieve fair and reasonable results for debtor's counsel in chapter 13 cases, bankruptcy courts should divide services into two categories: work that is standard or normal and customary in a chapter 13 case and work that falls outside of this standard. Fees for services that are normal and customary should be limited to the fixed fee established by the marketplace. Those services that go beyond the normal and customary standard should be compensated using the regular lodestar formula (reasonable number of hours multiplied by a reasonable rate). As one bankruptcy court concluded, "a bankruptcy court may allow an attorney representing a chapter 13 debtor an initial fee based on a 'normal and customary' debt-based formula. This Court suggests that if a request for additional fees is made, that the 'normal and customary' standard should be applied first and if the court finds that the case, or work in it, falls outside of that standard, then the lodestar method should be applied to calculate whatever additional fees are appropriate." *In re Shamburger,* 189 B.R. at 969. This approach provides the best means for rewarding attorneys representing debtors in chapter 13.

## FIXED FEE: NORMAL AND CUSTOMARY

■ In establishing what a reasonable fixed or flat fee should be, the court should be guided by those fees typically charged by attorneys who regularly practice in the bankruptcy court's jurisdiction. One court held that "[i]n discussing the compensation generally deemed appropriate for debtors' counsel in Chapter 13 cases, we have observed that the appropriate measure is determined by 'ascertainment of what an informed client and an informed attorney would agree should be paid for certain services. If the marketplace naturally establishes a price for a service, then we believe that it is logical to assume that this is the figure to which an informed client and an informed attorney would agree.'" *In re Rothman,* 206 B.R. 99, 110 (Bankr. E.D.Pa.1997) (quoting *In re Patronek,* 121 B.R. at 731).

In *Busy Beaver,* 19 F.3d at 849, the court of appeals concluded that "the cost of comparable services factor has an overarching role to act as a guide to the value of the services rendered given their nature and extent." See also *Zolfo, Cooper & Co. v. Sunbeam–Oster Co.,* 50 F.3d 253, 258 (3d Cir.1995). A bankruptcy court applying the *Busy Beaver* decision stated:

> [w]e believe that *Busy Beaver* requires that we apply the multi-step "market approach".... In ruling on the appropriate market rate of professionals in such [fee] applications, we consider, basically, three factors: (1) What does the professional person request? (2) What level of expertise or experience was required to perform the tasks in issue and how well have they been performed? and (3) What have other professionals of similar experience and expertise, faced with similar problems and performing with a level of competence comparable to the applicants in issue, typically charged?

*In re Dubin Paper Co.,* 169 B.R. 115, 122 (Bankr.E.D.Pa.1994).

■ In the instant case, Applicant billed Debtors on an hourly fee basis for all the work performed during the chapter 13 case. For its representation, Applicant requested a total allowance of $9,691.25, for approximately fifty five hours of work. Of the total hours billed by Applicant, the

---

**6.** "When a bankruptcy court determines that a case presents routine Chapter 13 matters, the court may review the fees requested in light of fees typically charged, and may reduce the requested fees accordingly. It is not necessary for the court to find that the time spent on any given task was excessive before reducing an award." *Bachman v. Laughlin (In re McKeeman),* 236 B.R. 667, 672 (8th Cir. BAP 1999) (citing *In re Howell,* 226 B.R. at 280 and *In re Shamburger,* 189 B.R. at 973).

court finds that approximately thirty eight hours were expended on normal and customary services including furnishing general legal advice to the Debtors regarding chapter 13; preparation of the Debtors' bankruptcy petition, schedules and their chapter 13 plan; reviewing proofs of claim filed in the Debtor's case; and attending the Debtor's § 341(a) meeting of creditors and their confirmation hearing. For this work, Applicant seeks an allowance of $6,596.05. Because it would be unreasonable to compensate Applicant for these hours using the lodestar formula, Applicant is awarded a fee of $1,500.00 for the normal and customary work.

## LODESTAR: BEYOND NORMAL AND CUSTOMARY

Any work provided by chapter 13 debtors' attorneys that exceeds the normal and customary, should be calculated using the conventional lodestar method. Chapter 13 debtors are typically charged additional legal fees for such matters as the defense of a motion to lift the automatic stay, objections to claims, cramdown of undersecured mortgages, and settlement of objections to confirmation.

Applicant rendered 16.68 hours of additional legal services which exceeded the normal and customary standard for chapter 13 fees. The majority of this time, or approximately 9.42 hours, was spent negotiating defaults and motions to lift the automatic stay filed by two lenders who held installment loan contracts on the Debtors' condominium. Ultimately these matters were resolved by consensual agreement between the parties, but additional time was required and, in the end, the Debtors were successful in retaining their residence. Applicant also spent additional time amending the Debtors' bankruptcy schedules and modifying their plan of reorganization (5.18 hours), and preparing an affidavit in lieu of attendance at the § 341(a) meeting of creditors (2.08 hours), necessitated by Mrs. Szymczak's compromised mental state that prevented her from attending a conventional meeting of creditors. Beyond these additional services, nothing in Applicant's time narratives, or the court's file, indicates that this case involved anything out of the ordinary.

 Under the lodestar, the court must determine if the services were provided in a cost efficient manner. Simply because an attorney spent time, does not mean it is compensable or that counsel used the most economical means of rendering the services.[7] Although bankruptcy attorneys are entitled to the same legal fees as non-bankruptcy attorneys, they must exercise the same billing judgment as non-bankruptcy attorneys.[8] If an attorney would not expect a client outside of bankruptcy to pay for certain work, counsel should not expect to be paid for the same work within bankruptcy.

"The [Supreme] Court in *Hensley* admonished that attorneys, in applying for fees, 'should make a good-faith effort to

---

7. The Third Circuit stated that "[b]ecause its time is precious, the reviewing court need only correct reasonably discernable abuses, not pin down to the nearest dollar the precise fee to which the professional is ideally entitled." *Busy Beaver*, 19 F.3d at 845. In addition, the court recently concluded that "the bankruptcy court's broad discretion [in reviewing fee applications] is due to the fact that 'no matter how close the [c]ourt comes to an objective determination of a reasonable fee, [the fee determination] is still, in the final analysis, a substantially subjective exercise.' " *United States Trustee v. Cain (In re Lan Assocs. XI, L.P.)*, 192 F.3d 109, 122 (3d Cir.1999) (quoting *In re Garland Corp.*, 8 B.R. 826, 831 (Bankr.D.Mass.1981)).

8. "[T]he court should review a fee application to ensure the applicant exercises the same 'billing judgment' as do non-bankruptcy attorneys by, for example, writing off unproductive research time, duplicative services, redundant costs precipitated by overstaffing, or other expenses with regard to which the professional generally assumes the cost as overhead in corresponding non-bankruptcy matters, or for which analogous non-bankruptcy clients typically decline to pay." *Busy Beaver*, 19 F.3d at 856. (citations omitted). Although the *Busy Beaver* decision dealt with a corporate debtor in chapter 11, it applies equally to chapter 13 cases.

exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.'" *In re Stromberg,* 161 B.R. at 517 (quoting *Hensley v. Eckerhart,* 461 U.S. at 432–34, 103 S.Ct. 1933). The bankruptcy court went on to state that "[n]ot every hour or part of an hour spent by an attorney is 'billable' and it is incumbent on the attorney to exercise 'billing judgment' when submitting applications to the court." *Id.*

 In reviewing Applicant's time records, it appears the Debtors were billed every time Applicant picked up the telephone, uttered the Debtors' name, or looked at the Debtors' case; even where nothing meaningful occurred. More importantly, time was billed at full attorney rates where the work could, and should have been performed by a secretary or a

paralegal.[9] This court is highly skeptical of this practice, and especially discourages it in chapter 13 cases.

In the instant case, the court also questions the number of hours billed by Applicant to complete the additional legal tasks required by the Debtors' bankruptcy case. Although the court does not dispute the need for, or Applicant's decision to perform the work, the court believes Applicant did not act in the most responsible and efficient way in accomplishing these services. Because the time spent by Applicant on these additional undertakings is excessive, the court will reduce the number of approved hours from 16.68, as billed by Applicant, to ten hours. Accordingly, Applicant is entitled to an additional allowance of $1,850.00 (ten hours multiplied by Applicant's regular hourly rate of $185.00) for those legal services rendered to the Debtors which were not included within

9. The court seriously questions whether Applicant provided the most cost efficient service to Debtors. It appears from the time narratives, that a paralegal, with a rate of $65.00 per hour, or more appropriately a secretary, should have been utilized by Applicant to perform many non-professional services. Instead, Applicant billed attorney time at a rate of $185.00 per hour for performance of ministerial and clerical services. The following are some illustrations of Applicant's inefficiency:

| Date | Time Narrative | Time | Amount |
|---|---|---|---|
| 10/29/98 | Discussion with PS regarding checking to see whether 5K cleared our trust account so I can write check out to Countrywide. | .08 | 14.80 |
| 10/30/98 | Drafted correspondence to Countrywide's counsel forwarding check. | .42 | 77.70 |
| | Drafted correspondence to Laurie in Mr. Shane's office forwarding check to cover maintenance fees. | .42 | 77.70 |
| | Prepared check request for payment of Twin Rivers. | .08 | 14.80 |
| | Telephone call to Laurie in Mr. Shane's office regarding cure of postpetition arrears; left message with receptionist. | .08 | 14.80 |
| | Reviewed file regarding debtor's instructions for | .33 | 61.05 |

| | | | |
|---|---|---|---|
| | payment and settlement with Twin Rivers. | | |
| 11/02/98 | Discussion with CS regarding telephone call from Laurie in Mr. Shane's office; instructed her to tell Laurie that we had sent check to be applied to association fees and that I would call her back. | .08 | 14.80 |
| 12/30/98 | Discussion with CS regarding setting up appointment with Mr. and Mrs. Szymczak for her to sign affidavit in lieu of personal appearance at meeting of creditors. | .08 | 14.80 |
| 03/02/99 | Drafted correspondence to Mr. Powers forwarding debtors' check for payment of mortgage. | .33 | 61.05 |
| 05/18/99 | Review notice regarding court date for Twin Rivers stay motion and diaried date for court appearance and filing of opposition papers. | .17 | 31.45 |
| | Drafted correspondence to clerk of court forwarding amended Schedule J to court for filing. | .17 | 31.45 |

Applicant charged the Debtors $414.40 to perform these services.

the $1,500.00 for normal and customary services.

### CONCLUSION

For the foregoing reasons the court concludes that Applicant is entitled to a total fee allowance in the amount of $3,350.00 plus $266.62 for expenses. The amount of this award incorporates $1,500.00 for normal and customary chapter 13 services, along with an $1,850.00 allowance for successfully defending two motions to lift the automatic stay, amending the Debtor's schedules, modifying the plan of reorganization, and preparing an affidavit in lieu of attendance at the Debtors' meeting of creditors. An order shall accompany this opinion.