**In re CHC INDUSTRIES, INC., f/k/a Cleaners Hanger Company, Debtor.**

No. 8:03–bk–20775–PMG.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 30, 2007.

Richard Benjamin Wilkes, Richard Benjamin Wilkes, PA, Russell M. Blain, Scott A. Stichter Stichter, Riedel, Blain & Prosser, Peter W. Zinober, Tampa, FL, for Debtor.

## ORDER ON MOTION FOR RECONSIDERATION AND/OR CLARIFICATION OF FINAL ORDER ON MOTION FOR RECONSIDERATION OF ORDERS APPROVING INTERIM FEE APPLICATIONS AND SEVENTH INTERIM FEE APPLICATION OF GLENN RASMUSSEN FOGARTY & HOOKER, P.A.

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider the Motion for Reconsideration and/or Clarification of Final Order on Motion for Reconsideration of Orders Approving Interim Fee Applications and Seventh Interim Fee Application of Glenn Rasmussen Fogarty & Hooker, P.A. The Motion was filed by the equity interest holders (the Equity Holders) of the Debtor, CHC Industries, Inc.

### Background

The Debtor filed its petition under Chapter 11 of the Bankruptcy Code on October 6, 2003.

On December 19, 2003, the Debtor filed a Motion for Entry of an Order Regarding Cycles and Procedures for Seeking and Awarding Interim Fees to Professionals. (Doc. 210).

On April 2, 2004, the Court entered an Order Regarding Cycles and Procedures for Seeking and Awarding Interim Fees to Professionals (the Procedural Order). (Doc. 385).

Generally, the Procedural Order authorized the Debtor to pay attorneys employed by the Debtor and the Committee on a

monthly basis in accordance with the conditions set forth in the Order. The Procedural Order also required the attorneys to file and serve interim fee applications according to a designated schedule, and set forth the procedure for providing notice to interested parties of all hearings scheduled to consider the interim applications.

The Procedural Order was served on the Local Rule 1007–2 Parties in Interest List. (Docs. 385, 387).

On April 16, 2004, the Court entered an Order authorizing the Official Unsecured Creditors' Committee (the Committee) in this case to employ Glenn Rasmussen Fogarty & Hooker, P.A. (Glenn Rasmussen) as its counsel. (Doc. 398).

On March 31, 2004, August 2, 2004, November 30, 2004, April 12, 2005, August 4, 2005, and December 5, 2005, respectively, Glenn Rasmussen filed its First, Second, Third, Fourth, Fifth, and Sixth Applications for Interim Allowance and Payment of Fees and Expenses. (Docs. 382, 607, 737, 1057, 1347, and 1559).

A notice of the hearing scheduled on each Application was filed with the Court and served on the Local Rule 1007–2 Parties in Interest List in accordance with the Procedural Order. (Docs. 392, 611, 744, 1171, 1378, and 1562). According to each notice, the deadline for any party to object to the fee application was five days before the hearing scheduled on the application.

No objections were filed to any of the Applications submitted by Glenn Rasmussen, and no objections to Glenn Rasmussen's Applications were asserted at the hearings conducted on April 26, 2004, November 1, 2004, January 24, 2005, July 11, 2005, September 19, 2005, and January 30, 2006.

On May 14, 2004, November 22, 2004, February 8, 2005, August 5, 2005, October 4, 2005, and February 14, 2006, respectively, the Court entered separate Orders approving Glenn Rasmussen's First, Second, Third, Fourth, Fifth, and Sixth Fee Applications. In each instance, the fees and costs requested in the underlying Application were approved in their entirety, and the Debtor was authorized to pay the allowed amounts to Glenn Rasmussen. Also in each case, the Order provided that it was an interlocutory order, and that all aspects of the interim allowance were subject to review by the Court at any point in time during the case. (Docs. 435, 721, 856, 1359, 1439, and 1645).

On February 26, 2006, the Equity Holders filed a Motion for Reconsideration of Orders Approving Interim Fee Applications. (Doc. 1671). In the Motion, the Equity Holders asked the Court to reconsider each of the Orders approving Glenn Rasmussen's interim allowance of fees "on the basis that the attorney's fees approved by the Court are unreasonable and excessive in amount for the services provided."

On April 17, 2006, the Equity Holders filed an Objection to Glenn Rasmussen's Seventh Application for Interim Allowance and Payment of Fees. (Docs. 1729, 1765).

On April 28, 2006, the Equity Holders filed a Supplemental Objection to Glenn Rasmussen's Seventh Application. (Doc. 1775).

On September 5, 2006, the Court entered its Order on Motion for Reconsideration of Orders Approving Interim Fee Applications of Glenn Rasmussen Fogarty & Hooker, P.A. (the Reconsideration Order), and a separate Order approving Glenn Rasmussen's Seventh Fee Application. (Docs. 1872, 1873).

In the Reconsideration Order, the Court determined that it would not reconsider the interim fees previously awarded to Glenn Rasmussen because (1) the estate is not administratively insolvent, (2) the Eq-

uity Holders' objections were essentially standard challenges that could have been asserted when the Applications were filed, (3) the Equity Holders did not show that reconsideration was warranted because of any wrongdoing or subsequent developments in the case, (4) the objections were untimely, and (5) the fees that were requested and approved were reasonable based on Glenn Rasmussen's contributions to the case.

On September 15, 2006, the Equity Holders filed a Motion (the Second Motion) for Reconsideration and/or Clarification of the Reconsideration Order. (Doc. 1878).

## Discussion

It should be noted at the outset that neither Glenn Rasmussen nor Robert B. Glenn have or have ever had any relationship, personal or professional, with the undersigned Bankruptcy Judge.

The Equity Holders' Second Motion states that it is filed pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure. (Doc. 1878, p. 1).

Rule 9023 provides that Rule 59 of the Federal Rules of Civil Procedure applies in cases under the Bankruptcy Code. F.R.Bank.P. 9023.

 Rule 59 of the Federal Rules of Civil Procedure provides in part:

**Rule 59. New Trials; Amendment of Judgments**

(a) **Grounds.** A new trial may be granted to all or any of the parties and on all or part of the issues ... (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the Unites States.

F.R.Civ.P. 59(a). The purpose of a motion filed under Rule 59 is to present newly discovered evidence or to correct manifest errors of law or fact in the Court's prior order. *Hill v. Tammac Corporation*, 2006 WL 529044, at *2 (M.D.Pa.). Reconsideration "is merited when there has been a clear error or manifest injustice in an order of the court or if newly discovered evidence is unearthed." *Key Mechanical Inc. v. BDC 56 LLC*, 2002 WL 467664, at *3 (S.D.N.Y.)(quoting *In re Bird*, 222 B.R. 229, 235 (Bankr.S.D.N.Y.1998)).

Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.

*Hill v. Tammac Corporation*, 2006 WL 529044, at *2. The "only grounds" for granting a party's motion for reconsideration under Rule 59 "are newly-discovered evidence or manifest errors of law or fact." *In re Wilson*, 282 B.R. 278, 282 (Bankr.M.D.Ga.2002)(quoting *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir.1999)).

 Further, a motion under Rule 59 should not be used "as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Hill v. Tammac Corporation*, 2006 WL 529044, at *2(quoting *Abu–Jamal v. Horn*, 2001 WL 1609761, at *9 (E.D.Pa.)). In other words, a motion under Rule 59 "should not give the moving party another bite at the apple by permitting argument on issues that could have been or should have been raised prior to the original motion." *Key Mechanical Inc. v. BDC 56 LLC*, 2002 WL 467664, at *3.

 Finally, motions for reconsideration should be granted sparingly due to the extraordinary nature of the remedy. *Hill*

*v. Tammac Corporation,* 2006 WL 529044, at \*2. The criteria by which such motions are evaluated are strictly construed against the moving party. *Key Mechanical Inc. v. BDC 56 LLC,* 2002 WL 467664, at \*3.

### A. The Reconsideration Order

In this case, the Court entered an Order (the Reconsideration Order) denying the Equity Holders' original Motion to Reconsider the Court's prior orders approving Glenn Rasmussen's interim fee awards. (Doc. 1872).

In the sixteen-page Reconsideration Order, the Court confirmed its authority to determine the reasonableness of professional fees in a bankruptcy case, and reviewed the circumstances under which the award of a professional's interim fees should be reconsidered. Such circumstances generally are found, for example, if the estate becomes administratively insolvent, or if wrongdoing is discovered on the part of the professional. (Doc. 1872, pp. 7–12).

The Court ultimately determined that Glenn Rasmussen's fees should not be reconsidered in this case, because (1) the estate is not administratively insolvent; (2) the Equity Holders' objections were essentially standard challenges that could have been asserted when the Applications were filed; (3) the Equity Holders did not show that reconsideration was warranted because of wrongdoing or subsequent developments in the case; (4) the objections were untimely; and (5) the fees were reasonable based on Glenn Rasmussen's contributions to the case. (Doc. 1872, pp. 12–16). In concluding that the fees were reasonable, the Court specifically noted:

> [T]he Court has presided over this case since its commencement, and has observed the courtroom advocacy of all of the attorneys appearing in the case as

they worked through complex issues involving a multimillion-dollar estate.

> Specifically, the Court notes that an attorney from Glenn Rasmussen attended all of the major hearings in this case, and participated constructively in disputes that were often contentious or essentially deadlocked. Glenn Rasmussen's contributions at the hearings reflected an in-depth preparedness and familiarity with the facts and issues, and an approach to the issues that served the Committee's duties and responsibilities under § 1103 of the Bankruptcy Code.

> The Court reviewed each of Glenn Rasmussen's Interim Fee Applications prior to approving them, and found that the legal services described in the entries were consistent with the contributions to the case that the Court observed.

(Doc. 1872, p. 15). The Equity Holders' original Motion for Reconsideration of the prior orders approving Glenn Rasmussen's interim fee applications was denied.

### B. The Second Motion

In the Motion presently before the Court (the Second Motion), the Equity Holders assert that the Reconsideration Order should be reconsidered for five reasons: (1) it is unclear whether the Court considered that "during the relevant periods Equity had no expectation that it would have an economic interest in the residual estate following the distributions to all creditors;" (2) it is unclear whether the Court considered that "the Evergreen Provisions were not followed and no fund was reserved from which excessive fees could be deducted;" (3) it is unclear whether the Court considered that Glenn Rasmussen had implicitly agreed that disgorgement would be appropriate if its fees were determined to be excessive; (4) the

Court failed to make findings as to reasonableness with the requisite specificity; and (5) the Court failed to conduct an evidentiary hearing as to disputed facts regarding the reasonableness of the fees. (Doc. 1878, pp. 2–3).

Additionally, at the hearing on the Motion, the Equity Holders asserted that they did not have the opportunity to file timely objections to the Interim Fee Applications because they were not included on the service list. (Transcript, pp. 5–15). The Equity Holders also asserted that the Court's Order did not expressly state whether it was an interim Order, or whether it was a final disposition of the issues. (Transcript, pp. 15–16).

Based on these assertions, the Equity Holders ask the Court to defer its ultimate determination regarding Glenn Rasmussen's fees until the Final Fee Applications are filed in this case. (Transcript, p. 16).

### C. Application

The Equity Holders' Second Motion should be denied. The Court has reviewed each of the assertions contained in the Second Motion and made at the hearing, and finds that the Equity Holders have not presented any newly-discovered evidence, or identified any manifest error of law or fact committed by the Court, within the meaning of Rule 59 of the Federal Rules of Civil Procedure.

#### 1. Existing circumstances

■ In the Second Motion, for example, the Equity Holders allege that "it is unclear whether or to what extent the Court considered" three particular circumstances prior to its entry of the Reconsideration Order. The three circumstances relate to (1) the Equity Holders' expectation regarding their entitlement to a distribution in the case, (2) the parties' compliance with the Procedural Order, and (3) Glenn Rasmussen's acceptance of the Procedural Order's provisions regarding disgorgement.

None of these circumstances involve any newly-discovered evidence. The circumstances were in existence and known to the Equity Holders when they filed their original Motion for Reconsideration. Additionally, the circumstances do not directly relate to the primary issue in this case: the reasonableness of Glenn Rasmussen's fees. Consequently, even if the Court failed to evaluate the circumstances in its Reconsideration Order, such a failure would not constitute a manifest error of law or fact.

#### 2. Notice

■ Further, the Equity Holders contend that they were not included on the service list for the Interim Fee Applications, and therefore did not receive notice of the hearings and deadlines for filing objections to Glenn Rasmussen's fee requests. (Transcript, pp. 5–15). This contention was not raised in either the original Motion for Reconsideration or the Second Motion that is currently before the Court. Instead, the Equity Holders presented the argument for the first time at the hearing on the Second Motion.

This is not a case where stockholders did not know that the company had filed a petition in bankruptcy. The stock of the Debtor company was not widely held. At the time of filing, the stock was held by 60 registered stockholders, many of whom appear to be related. (Doc. 84, Statement of Financial Affairs, question 21). Of the four directors of the company that were disclosed in the Statement of Financial Affairs, all of whose relationship with the corporation terminated within one year immediately preceding the commencement of the case, three were stockholders. (Doc. 84, q. 22 & 21). A total of $980,598.44 was paid to or for the benefit of creditors who

are or were insiders within one year immediately preceding the commencement of the case. (Doc. 84, q. 3b). Several of these insiders were also stockholders. (Doc. 84, q. 3b & 21). Stockholders were active in and familiar with the company and its operations. Although notice of many of the proceedings in a bankruptcy case, including the filing of applications for compensation, is not required to be given to equity, the Court has promulgated a Local Rule (Local Rule 2002–1) providing that any interested party may request and receive copies of all notices, orders, and other pleadings served on the Local Rule 1007–2 Parties in Interest List. The Equity Holders could easily have added themselves or a representative to this list. Practically all decisions made in a bankruptcy case affect, in some way, the distributions to be made by the Debtor and therefore the amounts ultimately remaining for equity. The statement that equity did not expect a distribution is not a reason to revisit decisions in the case that affected the liabilities and distributions of the Debtor.

The Equity Holders' non-appearance on the service list was clearly within their knowledge at the time that they filed the original Motion for Reconsideration, and is not newly-discovered evidence. The issue apparently was raised at the hearing on the Second Motion, however, in response to the Court's finding in the Reconsideration Order that the Equity Holders' objections were untimely.

The untimeliness of the Equity Holders' objection was only one basis for the Court's conclusion that Glenn Rasmussen's fees should not be reconsidered. The Court also found that the fees should not be reconsidered because the estate is not administratively insolvent, because the Equity Holders did not show that reconsideration is warranted due to any wrongdoing or subsequent developments in the case, and because the fees were reasonable based on Glenn Rasmussen's contributions to the case.

These findings independently justify the Court's ultimate conclusion that the fees awarded to Glenn Rasmussen were reasonable, regardless of whether or not the Equity Holders asserted untimely objections. The Equity Holders have not shown that the ultimate conclusion of reasonableness constitutes a manifest error of fact or law.

### 3. Specific findings

■ Additionally, the Equity Holders assert that the Court failed to make specific findings regarding the reasonableness of Glenn Rasmussen's fees, and failed to conduct an evidentiary hearing to resolve disputed issues of fact.

■ Generally, Courts should explain their reasons for awarding compensation to a professional. There is no definitive guideline, however, on the extent to which a Court must set forth the details of its analysis. "The bankruptcy judge must *briefly* explain the findings and reasons upon which the award is based, including an *indication* of how each of the twelve factors listed in Johnson affected his decisions." *In re First Colonial Corp. of America*, 544 F.2d 1291, 1300 (5th Cir.1977)(Emphasis supplied). The purpose of the explanation is simply to provide "some assurance that the court arrived at a just compensation based on appropriate standards." *In re Tarrant*, 349 B.R. 870, 896 (Bankr.N.D.Ala.2006)(citing *Davis v. Fletcher*, 598 F.2d 469, 470–71 (5th Cir. 1979)).

However, the "court's order on attorney's fees only need be specific enough to allow meaningful review...." *Grant v. George Schumann Tire & Battery*

*Co.*, 908 F.2d [874] at 878, n. 10 [(11th Cir.1990)]. Even though a bankruptcy court's fee determination may not explicitly state which of the findings was made pursuant to which of the twelve factors, the fee determination is sufficient if it is otherwise "clear that the court considered those factors." *Id.*

*In re Tarrant*, 349 B.R. at 896. The Court is not required to perform an hour-by-hour review if such a review would be a waste of judicial resources. *In re Howell*, 226 B.R. 279, 281 (Bankr.M.D.Fla.1998). Additionally, the Court is not required to conduct an evidentiary hearing unless there are disputed issues of fact that compel such an inquiry. *In re Howell*, 226 B.R. at 281.

In this case, the Court reviewed Glenn Rasmussen's Fee Applications prior to the entry of the respective Orders approving Glenn Rasmussen's requests for compensation. (Docs. 435, 721, 856, 1359, 1439, 1645, and 1873). Additionally, after the Equity Holders filed their initial Motion for Reconsideration of the Orders, the Court conducted a further review of the Applications, and entered a sixteen-page Order in which it evaluated the objections asserted by the Equity Holders, and in which it further evaluated the value of Glenn Rasmussen's services to the case. (Doc. 1872).

The Orders entered in this case more than satisfy the requirement of a "brief explanation" showing that the Court considered all relevant factors before approving Glenn Rasmussen's Fee Applications. *In re First Colonial Corp. of America*, 544 F.2d at 1300. Additionally, the Court finds that the Equity Holders have not isolated any specific issue of fact that required evidence before the compensation was approved. *In re Howell*, 226 B.R. at 281.

The Equity Holders have not shown that the Court committed any manifest error of fact or law in explaining the basis for its awards to Glenn Rasmussen.

### 4. Nature of the Reconsideration Order

Finally, the Equity Holders asserted at the hearing on its Second Motion that the Reconsideration Order did not expressly state whether it was an interim Order or a final Order. (Transcript, pp. 15–16). Consequently, the Equity Holders seek clarification as to the dispositive nature of the conclusions.

As set forth in the Order on Glenn Rasmussen's Eighth Fee Application, entered contemporaneously herein, the Reconsideration Order was intended to represent a final determination that Glenn Rasmussen's services were appropriate at the time that they were performed, and that the approved fees were reasonable.

### 5. Conclusion

In conclusion, the Court finds that the Equity Holders' Second Motion should be denied. The Equity Holders have not presented any newly-discovered evidence, or identified any manifest error of law or fact committed by the Court, within the meaning of Rule 59 of the Federal Rules of Civil Procedure.

Accordingly:

**IT IS ORDERED** that the Motion for Reconsideration and/or Clarification of Final Order on Motion for Reconsideration of Orders Approving Interim Fee Applications and Seventh Interim Fee Application of Glenn Rasmussen Fogarty & Hooker, P.A., filed by the equity interest holders of CHC Industries, Inc., is denied.