**IN RE: Michael Anthony BREWER, Debtor.**

**Gary Lindros, Plaintiff,**

v.

**Michael Anthony Brewer and Julie Little Brewer, Defendants.**

Case No.: 3:07–bk–218–JAF
Adv. No.: 3:09–ap–344–JAF

United States Bankruptcy Court, M.D. Florida.
**Jacksonville Division**

Filed June 10, 2013

Kimberly H. Israel, Held & Israel, Jacksonville, FL, for Julie Little Brewer and Michael Anthony Brewer, Defendants.

Janet H. Thurston, Cohen & Thurston, P.A., Jacksonville, FL, for Gary C. Lindros, Plaintiff.

Chapter 7

### *ORDER DENYING DEFENDANT'S RULE 59 MOTION TO ALTER OR AMEND JUDGMENT*

JERRY A. FUNK, United States Bankruptcy Judge

This proceeding is before the Court on Defendant Michael Anthony Brewer's

("Defendant") Motion to Alter or Amend Judgment (Doc. 87, the "Motion") filed on May 7, 2012. Plaintiff Gary Lindros ("Plaintiff") filed a response in opposition to the Motion (Doc. 89, the "Response").

After a continuance (Doc. 105), a final evidentiary hearing on the Motion was held on February 1, 2013. At the conclusion of the hearing, and in lieu of oral argument, the Court directed the parties to file memoranda in support of their respective positions. Such memoranda having been filed (Docs. 112, 113), the matter is now ripe for the Court's determination. For the reasons stated herein, the Motion (Doc. 87) is denied.[1]

## I. Background

By way of background, on January 19, 2007, Defendant filed for protection under Chapter 7 of the Bankruptcy Code[2] (Case No. 3:07–bk–218–JAF, the "Main Case"). Subsequently, on February 26, 2008, after a successful mediation, Defendant entered into a settlement agreement (the "Settlement Agreement") with the Chapter 7 Trustee, Robert Altman (the "Trustee"), regarding three adversary proceedings (Adv. Nos. 3:07–ap–149–JAF; 3;07–ap–150–JAF; 3:07–ap–229–JAF).[3] Additionally, the Settlement Agreement provided for Defendant's re-purchase of estate property.

On April 21, 2008, the Trustee served notice of the Settlement Agreement on all parties in interest through a Notice of Intent to Compromise Claims and to Sell Certain Property of the estate (3:07–bk–218–JAF, Doc. 62, the "Notice of Settlement"). The Notice of Settlement attached the Settlement Agreement and contained a detailed description of both the claims being settled and the estate assets being purchased by Defendant (id. at 14–21).

In the Notice of Settlement, the Trustee identified and discussed, inter alia, a claim for which he filed suit regarding an aggregate $55,000 in transfers made by Defendant to Royal Palm Contractors Corp. ("Royal Palm") (Adv. No. 3:07–ap–149–JAF, the "Royal Palm Adversary"). In the Royal Palm Adversary, the Trustee asserted the $55,000 in transfers were loans made by Defendant to Royal Palm, which Royal Palm never repaid (3:07–ap–149–JAF, Doc. 1). As such, the Trustee claimed Royal Palm owed the estate $55,000 (id.).

The Notice of Settlement additionally identified three cash withdrawals from Royal Palm's bank account totaling $98,046 (3:07–bk–218–JAF, Doc. 62 at 8–9). This amount was allegedly avoidable based on the Trustee's contention that Defendant owned 100 percent of Royal Palm (id. at 8–9). Based on the foregoing, the Trustee moved to amend the complaint in the Royal Palm Adversary (3:07–ap–149–JAF, Doc. 26), claiming Royal Palm was the alter ego of Defendant (see also Def.'s Ex. 10 at 16).

The Notice of Settlement further provided that Defendant and Royal Palm disputed the allegations of the Trustee, supra

---

1. Also pending before the Court is Defendant's Motion to Strike Portion of Plaintiff's Memorandum of Law (Doc. 114, the "Motion to Strike"). Plaintiff filed a response in opposition (Doc. 115) wherein he requests the Court to strike Defendant's Motion to Strike, Neither request is well taken, and both are denied.

2. Unless otherwise indicated, all references to the "Bankruptcy Code" or "Code" are to 11 U.S.C. § 101, et seq.

3. In relation to the settlement, the parties entered into a confidentiality agreement. As such, the content of the mediation discussions is confidential.

(3:07–bk–218–JAF, Doc. 62 at 8). In what appears to be Royal Palm's justification for not repaying the loans made to it by Defendant, the Notice of Settlement set forth the following:

> On January 17, 2008, Royal Palm provided to the trustee a check written on an account in the name of Royal Palm and Michael Brewer [Defendant], dated July 17, 2005 payable to Citibank signed by Mr. Brewer in the amount of $80,000. Royal Palm contends that even though [Defendant's] name appears on the account, the account was solely in Royal Palms' [sic] name. It [Royal Palm] further contends that the $80,000 was paid toward an obligation owed by [Defendant] in his individual capacity,

(*Id.* at 9).

On May 9, 2008, Plaintiff filed an Objection to the Notice of Settlement (3:07–bk–218–JAF, Doc. 69, the "Objection"). On May 15, 2009, after several continuances due in part to Plaintiffs efforts to obtain discovery (*see* 3:07–bk–218–JAF, Docs. 98, 117, 124), the Court held a final evidentiary hearing on the Objection. In his pretrial memorandum in support of the Objection, Plaintiff asserted that he was concerned the proposed settlement might encompass what Plaintiff purported to be a fraudulent transfer into Defendant's homestead property (3:07–bk–218–JAF, Doc. 131 at 6–7). More particularly, it was Plaintiff's contention that the $80,000 payment made to Citibank, *supra*, was actually a transfer that paid down a significant portion Defendant's home equity line of credit. Plaintiff claimed this transfer of nonexempt property into Defendant's exempt homestead property was made in an effort to defraud his creditors (*id.*).

Plaintiff additionally noted that the Settlement Agreement did not allocate any settlement proceeds to this potential claim. Since the proposed settlement provided that it would bind the estate and all parties in interest "as to all such known claims which have been or could be asserted ... by or through the Trustee or the [e]state," Plaintiff sought clarification as to whether the Trustee knew at the time of settlement that the $80,000 transfer was a potential claim, and if so, to explain why settlement proceeds were not allocated to it (*id.* at 15–17).

At the May 15, 2009 hearing, the Trustee testified that the reference to "known claims" in the Settlement Agreement referred only to claims that he was aware he could assert at the time he entered into the Settlement Agreement (*i.e.*, on or about February 26, 2008) (Def.'s Ex. 10 at 50, 85). Specifically, the Trustee stated as follows: "If there were any claims that were not disclosed or we were unaware of that we might have against any parties, we were not releasing anything regarding those [claims]." (*Id.* at 50).

Later in the hearing, in response to questioning regarding discovery related documents provided to the Trustee by Plaintiff's counsel, the Trustee stated, with respect to his knowledge regarding any "distributions of money from Coastline East[4] to Michael Brewer," that he recalled an $80,000 check being used to pay toward Defendant's home (*id.* at 94).[5] The examining attorney pointed out to the Trustee that the $80,000 check was actually issued by Royal Palm and not Coastline East (*id.* at 95). To which, the Trustee responded: "That may be." (*Id.*). For reasons not

---

4. Coastline East Corporation was the defendant in Adversary Proceeding No. 3:07–ap–150–JAF.

5. It should be noted that the transcript of the May 15, 2009 hearing, which took place in the underlying case, was not submitted into evidence at the trial on this matter.

pertinent here, the May 15, 2009 hearing was continued to June 3, 2009.

At the June 3, 2009 continued hearing on the Objection, the Trustee testified in furtherance of clarifying, for both Plaintiff and the Court, as to what "known claims" the Settlement Agreement intended to compromise and release (Def.'s Ex. 11 at 5–6, 11–19). In response to Plaintiffs counsel's questions regarding whether, at the time the Trustee entered into the Settlement Agreement, he knew of any other transfer(s) into the Defendant's homestead property besides the $50,000 transfer the Trustee was suing on in Adversary Proceeding No. 3:07–ap–229–JAF,[6] the Trustee testified unequivocally that he did not (*id.* at 17–19).

Plaintiff's counsel continued questioning the Trustee as follows:

> [W]ere you aware of any other transactions between Mr. and Mrs. Brewer that would have fallen within the complaint that you could have pled? Any other transfers of assets between the two? Any transfers other than that into the home mortgage that you were aware of that you could have filed a complaint on?

(*Id.* at 18–19). The Trustee responded: "[t]hat complaint [Adversary Case No. 3:07–ap–229–JAF] specifically was related to the [$50,000] transfer into the home mortgage. And that was all that was intended, and that was all that I was aware of." (*Id.*).

Plaintiff's counsel asked the Trustee whether he was aware of any transactions between Michael Brewer and Royal Palm, other than those which were listed by check date and dollar amount in the Royal Palm Adversary complaint, that constituted loans or accounts receivable that would have been an asset of the estate. The Trustee testified that there were none he was aware of (*id.* at 17–18). Based on the Trustee's representation(s) in this regard, Plaintiff withdrew his Objection to the Notice of Settlement in open court (*id.* at 21–22). Consequently, the Court approved the Settlement Agreement.

Shortly thereafter, on July 13, 2009, Plaintiff filed the instant adversary complaint (3:09–ap–344–JAF, Doc. 1), seeking a determination that the $80,000 payment to Citibank was a fraudulent asset conversion pursuant to section 222.30 of the Florida Statutes. Plaintiff sought an equitable lien on Defendant's homestead property in the amount of $80,000, or alternatively, a money judgment in that amount. On September 30, 2010, after a trial on the merits, the Court entered Findings of Fact and Conclusions of Law (Doc. 34),[7] and further entered an $80,000 money judgment against Defendant and his wife (Doc. 35, the "Judgment").

One of Defendant's affirmative defenses in the adversary proceeding was that the suit was barred by the Settlement Agreement with the Trustee. Defendant, however, refused to waive the confidentiality of the settlement discussions. Consequently, the Court was obliged to rely on the Trustee's testimony from the June 3, 2009 continued hearing on the Objection, which was submitted in evidence, to determine wheth-

---

6. On July 3, 2007, the Trustee filed Adversary Proceeding No. 3:07–ap–229–JAF against Defendant and his wife, Julie Brewer, in relation to the undisclosed and alleged fraudulent transfer from Defendant to Mrs. Brewer of a $50,000 certificate of deposit Defendant purchased in 2003. The transfer, which occurred approximately three months prior to Defendant's bankruptcy filing, concerned Defendant's homestead property because Mrs. Brewer used the $50,000 certificate of deposit to pay off the mortgage on the property.

7. The Court's Findings of Fact and Conclusions of Law (Doc. 34) is incorporated herein by reference.

er the Settlement contemplated a "known" claim related to the $80,000 transfer into Defendant's homestead. Based on the record before it at the time of trial, the Court found that it did not. Additionally, the Court determined that the transfer was made by Defendant with intent to hinder, delay or defraud the Plaintiff and was therefore avoidable for the benefit of creditors (Doc. 34 at 15). Since, except in limited circumstances, Florida's Constitution prevents a judgment lien against a debtor's homestead, the Court entered a money judgment against Defendant and his wife in the amount of $80,000. On October 8, 2010, Defendant filed a motion for reconsideration of the Judgment (Doc. 39), which the Court denied on February 7, 2011 (Doc. 41).

The Judgment was appealed to the United States District Court (Doc. 43, Notice of Appeal; *see also Brewer v. Lindros*, Case No. 3:11–cv–293–J–RBD). On appeal, Defendant argued, *inter alia*, that the Court erred: (1) by not finding the underlying claim of the suit was barred by the Settlement Agreement; and (2) by entering a money judgment against Mrs. Brewer (3:11–cv–293–J–RBD, Doc. 7 at 12–16, 20–21).[8] The District Court remanded the case to the Court for clarification as to whether it considered the applicability of *Havoco of Am., Ltd. v. Hill*, 790 So.2d 1018 (Fla.2001) ("*Havoco I*"), *Havoco of Am., Ltd. v. Hill*, 255 F.3d 1321 (11th Cir.2001) ("*Havoco II*"), and *Dowling v. Davis*, 295 Fed.Appx. 322, 323 (11th Cir. 2008) when it determined Defendant's conversion of nonexempt funds into exempt homestead property was an "avoidable" transfer (3:11–cv–293–J–RBD, Doc. 42 at 1–3).[9]

In a memorandum order on remand, dated April 27, 2012, the Court explained that the entry of a money judgment does not affect a debtor's homestead exemption; therefore, it "does not run afoul of *Havoco*" (Doc. 85 at 6). For reasons not pertinent here, however, the Court vacated the money judgment as to Mrs. Brewer (*id.* at 8). On May 7, 2012, Defendant filed the instant Motion to Alter or Amend Judgment (Doc. 87). At the February 1, 2013 continued hearing on the Motion, the Trustee testified that, at the time he entered into the Settlement Agreement, the $80,000 transfer was a "known" claim since the $80,000 check to Citibank was mentioned in the Settlement Agreement (Doc. 116 at 43, 48, 51). The Trustee additionally testified that he recalled that unknown claims were "carved out" of the Settlement Agreement (*id.* at 55). The Trustee stated he was not subpoenaed to testify at the trial on this matter, and that he testified truthfully at the June 3, 2009 continued hearing on the Objection (*id.* at 56, 58).

## II. Discussion

By way of the Motion (Doc. 87), Defendant seeks, pursuant to Rule 59 of the Federal Rules of Civil Procedure (made applicable in this instance by Rule 9023 of the Federal Rules of Bankruptcy Procedure), to have the $80,000 Judgment entered against him vacated. The bases for the Motion are to prevent manifest injustice and/or to correct clear error of law. In this regard, the Motion asserts the Court erred: (1) by entering a money judgment against Defendant when the monies he converted "were put into his homestead"; and (2) by not finding the Settlement Agreement released the underlying

---

8. Defendant did not argue the Court erred in entering a money judgment against him.

9. The issue on appeal regarding whether the Settlement Agreement barred the action was not remanded to the Court for further determination.

claim (Doc. 87 at 2–5). As an alternative ground for relief, Defendant maintains $60,000 of the $80,000 was repaid to Royal Palm, "rendering the prior transfer a nullity to that extent," and therefore, the Judgment against Defendant should at a minimum be reduced by $60,000 (*id.* at 6–7; *see also* Doc. 112 at 9–10).

■■■ Rule 59 of the Federal Rules of Civil Procedure grants authority to the Court to reconsider orders after entry only upon one of the following grounds: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; (3) to correct a clear error of law; or (4) to prevent manifest injustice. *See In re CHC Indus., Inc.*, 381 B.R. 385, 389–90 (Bankr.M.D.Fla. 2007); *see also* Fed. R. Bankr.P. 9023. A motion under Rule 59 is an extraordinary remedy and should not be used "as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *In re CHC Indus., Inc.*, 381 B.R. at 389–90 (internal quotations and citations omitted).

### A. Untimeliness of the Motion

■■ As an initial matter (with the exception of Defendant's argument that the Court's entry of a money judgment is improper) Defendant's Motion is untimely, and is not well taken. To illustrate, motions filed pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure must be filed within fourteen days of the date of entry of the order or judgment. Although Defendant filed the Motion (Doc. 87) within fourteen days of the date the Court entered its memorandum order on remand (Doc. 85), *supra*, a review of the substance of the Motion and the record of this proceeding reveals Defendant is requesting the Court to reconsider issues related to its rulings regarding the September 30, 2010 Judgment, which were made a year and a half before Defendant filed the instant Motion. As such, the Motion is untimely, whether treated under Rule 59 or 60 of the Federal Rules of Civil Procedure.[10]

To be more precise, the Motion raises the issue of whether the Settlement Agreement released the underlying claim. This issue was determined by the Court in its Findings of Fact and Conclusions of Law (Doc. 34) and Judgment (Doc. 35) entered on September 30, 2010. Defendant appealed the September 30, 2010 Judgment to the District Court. The District Court remanded the matter for the Court to clarify whether it considered the implication(s) of the *Havoco* and *Dowling* cases in entering a money judgment against Defendants. The matter was not remanded for the Court to re-determine whether the Settlement Agreement released the underlying claim.

On April 27, 2012, the Court entered its memorandum order on remand (Doc. 85), which clarified the limited issue concerning the implication(s) of *Havoco and Dowling* in entering a money judgment against Defendant with respect to the fraudulent transfer of nonexempt funds into his exempt homestead property. Defendant filed the Motion (Doc. 87) shortly thereafter.

---

**10.** Motions filed in accordance with Rule 60 of the Federal Rules of Civil Procedure must be filed "within a reasonable time—and for reasons (1) [mistake, inadvertence, surprise, or excusable neglect]; (2) [newly discovered evidence]; and (3) [fraud ... misrepresentation, or misconduct by an opposing party] no more than a year after the entry of the judgment or order or the date of the proceeding." Fed.R.Civ.P. 60 (made applicable to bankruptcy proceedings by Rule 9024 of the Federal Rules of Bankruptcy Procedure).

The time frame provided in Rule 9023 of the Federal Rules of Bankruptcy Procedure for the filing of a timely request to alter or amend a judgment promotes the finality of judgments. The Court's determination that the Settlement Agreement did not release Plaintiffs $80,000 claim became final ten days after the entry of the Court's Order denying Defendant's motion for reconsideration of the September 30, 2010 Judgment (Doc. 41) (*i.e.*, on February 17, 2011).[11] The memorandum order on remand (Doc. 85) did not re-consider whether the underlying claim was barred by the Settlement Agreement, as that issue had already become final. In sum, the Motion is untimely because it seeks to reconsider issues that became final over one year prior.[12]

### B. The Merits of the Motion

Irrespective of the foregoing, the Motion is nevertheless due to be denied.

■■■ Regarding whether the Settlement Agreement encompassed the $80,000 claim, in Florida, when interpreting a contract, courts are typically bound by the four corners of the document. *Duval Motors Co. v. Rogers*, 73 So.3d 261, 265 (Fla. 1st DCA 2011). "As a general rule, evidence outside the contract language, otherwise known as parol evidence, may not be considered unless the contract language contains a latent ambiguity." *Id.* A latent ambiguity occurs in a contract when "the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings." *Id.* at n. 2 (internal quotations and citations omitted).

■ Parol evidence may be admitted to "explain, clarify, or elucidate the ambiguous term." *Strama v. Union Fidelity Life Ins. Co.*, 793 So.2d 1129, 1132 (Fla. 1st DCA 2001) (internal quotations and citations omitted). Once it is determined that parol evidence is necessary to establish the parties' intent, a court's finding as to intent is a question of fact. *Centennial Mortg., Inc. v. SG/SC Ltd.*, 772 So.2d 564, 566 (Fla. 1st DCA 2000).

■ Here, although the language of the Settlement Agreement appears to be straightforward, the parties' conflicting interpretations indicate an unanticipated ambiguity regarding the "known claims" language, and whether the agreement contemplated settlement of the $80,000 claim. *See id.* at 265 n. 2. At the trial on this matter, the Court looked to parol evidence to determine the proper construction of the Settlement Agreement in accordance with the parties' original intent. In this regard, the primary purpose of the June 3, 2009 continued hearing on the Objection was to determine the parties' intent with respect to the scope of the Settlement Agreement, and in particular, whether it encompassed the $80,000 claim. In the Objection, Plaintiff vehemently opposed the settlement to the extent it may have encompassed the $80,000 claim. Apparently, through his own discovery efforts, Plaintiff determined the $80,000 transfer paid down Defendant's home equity line of credit. Plaintiff believed this constituted a fraudulent asset conversion pursuant to the Florida Statutes.

Plaintiff noted that, although the Settlement Agreement mentioned the $80,000 transfer, it was unclear whether this was a

---

11. In 2010, Rule 9023 provided a ten day period within which to file a motion to alter or amend judgment.

12. This same reasoning applies to Defendant's alternative argument that the Judgment against Defendant should be reduced by $60,000.

"known" claim. As such, Plaintiff sought clarification as to whether the $80,000 transfer constituted a claim the Trustee had knowledge of at the time he entered into the Settlement Agreement (*i.e.*, on or about February 26, 2008). Plaintiff further expressed his concern that no settlement proceeds had been allocated toward this potential claim of the estate.

At the June 3, 2009 continued hearing, Plaintiff's counsel elicited testimony from the Trustee indicating the Settlement Agreement contemplated only the claims related to the three pending adversary proceedings (Adv. Nos. 3:07–ap–149–JAF; 3:07–ap–150–JAF; 3:07–ap–229–JAF), none of which contained a claim (or a proposed amendment to the complaint) regarding the subject $80,000 transfer (*see* Def.'s Ex. 11 at 15–19). The Trustee stated that at the time of the Settlement Agreement he was unaware of any transfers into Defendant's homestead property, apart from the $50,000 transfer that formed the basis of Adversary Proceeding No. 3:07–ap–229–JAF (*id.*).

Based on the Trustee's testimony in this regard, Plaintiff withdrew his Objection and the Court approved the Settlement Agreement. It was the Court's, as well as Plaintiff's, understanding that the Trustee's testimony clarified that the subject $80,000 transfer was not a claim known to him at the time of settlement. In an abundance of caution, the Court specifically inquired of Defendant, and his counsel, that if the Settlement Agreement contemplated the settlement of additional matters, they must immediately advise the Court (Def.'s Ex. 11 at 9–10). Neither Defendant nor his counsel advised the Court with respect to the same.

At the trial on Plaintiff's complaint, however, Defendant argued the Settlement Agreement encompassed the $80,000 claim.[13] Defendant refused to waive the confidentiality of the mediated settlement discussion(s), and otherwise failed to submit evidence regarding the parties' intent. The Court was then, as it is now, constrained to rely on the Trustee's testimony at the June 3, 2009 continued hearing on the Objection. Such testimony is unequivocal in its import, which is that the $80,000 fraudulent transfer claim was not a "known" claim to the Trustee on or about February 26, 2008, the date he entered into the Settlement Agreement.

The Court would note that at some point subsequent to entering into the Settlement Agreement the Trustee became aware that the $80,000 check to Citibank represented a potential fraudulent transfer claim. The matter was set forth in Plaintiff's brief in support of the Objection, which was filed prior to both hearings on the Objection. The record is unclear, however, as to when exactly the Trustee became aware of such. As the Court noted in its Findings of Fact and Conclusions of Law (Doc. 34), "the issue with regard to the settlement and release is not what the creditors and their attorneys knew but rather what the Trustee knew at the time he entered into the settlement agreement on February 26, 2008" (Doc. 34 at 14).

The Court approved the settlement based on the parties' representation(s), or lack thereof, in this regard. Defendant cannot now complain about this determination. Especially when, at trial, Defendant neither presented evidence on the issue nor agreed to wave the confidentiality of the settlement discussions. The Court will not permit Defendant to use the confidentiality of the settlement discussions as both a sword and a shield.

13. Defendant represented himself at trial

Furthermore, as the District Court has already found, the additional evidence submitted by Defendant is not newly discovered evidence (*see* Case No. 3:11–cv–293–J–RBD, Doc. 39). The evidence Defendant now submits in relation to the Motion, including the testimony provided at the February 1, 2013 hearing, was available to Defendant at the time of trial. The Court acknowledges that at the February 1, 2013 hearing on the Motion, the Trustee testified that the $80,000 fraudulent transfer claim was a claim known to him at the time of settlement; however, the Trustee additionally testified that his testimony at the June 3, 2009 continued hearing on the Objection was under oath and was truthful. As the Trustee's testimony at the February 1, 2013 hearing conflicts with his prior testimony, the Court finds the Trustee's testimony at the June 3, 2009 hearing to be more credible. Such testimony was provided in closer temporal proximity to the February 26, 2008 Settlement Agreement. Thus, the Court finds the Trustee's recollection of events would have been more accurate at that time, rather than on February 1, 2013 (three and one half years later).

There being no new evidence not available at trial, no intervening change in controlling law, and the Court finding no clear error of law or manifest injustice, Defendant's Motion in this regard is denied.

The same reasoning, *supra*, applies to Defendant's argument in the alternative—*i.e.*, that the Judgment should be reduced by $60,000 (*see* Doc. 87 at 6–7). Specifically, Defendant states the uncontroverted evidence at trial demonstrates that Defendant's wife, Julie Brewer, paid Royal Palm $60,000 of the $80,000 previously taken by way of her own home equity line of credit

(*id.* at 6). In the Court's Findings of Fact and Conclusion of Law (Doc. 34) in support of the Judgment (Doc. 35), however, the Court made a specific finding that, due to the commingling of funds, Defendant failed to prove the monies he used to pay off his home equity loan were repaid by Mrs. Brewer with funds she obtained from her own home equity loan (Doc. 34 at 10–11).

Defendant has submitted no new evidence on this issue and has otherwise failed to show clear error. A motion under Rule 59 should not be used "as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *In re CHC Indus., Inc.*, 381 B.R. at 389–90 (internal quotations and citations omitted). The Motion in this regard is therefore denied.

■ With respect to Defendant's argument that the Court erred in finding the entry of a money judgment against Defendant is permissible under the facts of the case, Defendant has failed to establish that the Court committed a clear error of law.[14] Even Defendant acknowledges that *Havoco* is silent on the specific question of whether section 222.30 of the Florida Statutes supports a money judgment in this instance (*see* Doc. 87 at 3; Doc. 112 at 13). The cases cited by Defendant, *Randazzo v. Randazzo*, 980 So.2d 1210 (Fla. 3d DCA 2008) and *DeMayo v. Chames*, 934 So.2d 548 (Fla. 3d DCA 2006), are inapposite as those cases deal with the imposition of liens on homestead properties. In this case, the Court did not impose a lien upon Defendant's homestead property. The Court simply entered a money judgment in the amount of the funds fraudulently

---

**14.** The Court incorporates its reasoning contained in the memorandum opinion on remand (Doc. 85).

transferred into Defendant's homestead property.

The Florida Constitution provides that "no judgment, decree or execution shall be a lien" upon homestead property. Art. X, § IV(a)(*l* ), Fla. Const. The Judgment entered in this case does not permit Plaintiff to look to Defendant's homestead property for its satisfaction. Consequently, the money judgment does not run afoul of Article X, Section 4 of the Florida Constitution or the cases interpreting the same.[15] Having failed to establish any of the requirements of Rule 59 to alter or amend the Judgment, Defendant's Motion is denied.

### III. Conclusion

For the foregoing reasons, it is **ORDERED**:

1. Defendant Michael Anthony Brewer's Motion to Alter or Amend Judgment (Doc. 87) is denied.

2. Defendant's Motion to Strike Portion of Plaintiff's Memorandum of Law (Doc. 114) is denied.

---

15. The Court utilized *Hansard Const. Corp. v. Rite Aid of Fla., Inc.*, 783 So.2d 307, 308–09 (Fla. 4th DCA 2001), in interpreting the statutory language contained in Fla. Stat. § 222.30(3)(c)(2)—*i.e.*, in interpreting the phrase "any other relief the circumstances may require" (Doc. 85 at 5–6). The *Hansard* case supports the Court's conclusion that such language is sufficiently broad to encompass the entry of a money judgment. Defendant has failed to show how the Court's interpretation of this statutory language constitutes clear error.